[Civ. No. 24006. First Dist., Div. Two. May 28, 1968.]

ANGELE T. O'CONNOR, Individually and as Executrix, etc., et al., Plaintiffs and Appellants, v. RICHMOND SAVINGS AND LOAN ASSOCIATION, Defendant and Respondent.

524

Gilmore & Lewis and Richard C. Lewis for Plaintiffs and Appellants.

Scampini, Mortara & Ertola and Ben Mortara, Jr., for Defendant and Respondent.

AGEE, J.—On September 17, 1959 building contractor Albert R. Muth and Sons borrowed a total of $176,450 from Richmond Savings and Loan Association. The loan was evidenced by 17 promissory notes, ranging in amounts from $9,750 to $10,900, and each note was secured by a separate deed of trust on one of 17 adjoining lots on 5th Street, in Vallejo. Single family dwellings were to be built by Muth on each of the lots, as provided in 17 separate "Building Loan

Agreement[s]," executed contemporaneously with the notes and deeds of trust.

Clause 5 of each deed of trust provided that, if the trustor (Muth) should fail to perform the acts provided for therein, the beneficiary (lender) could "do the same in such manner and to such extent" as it *"may deem necessary to protect the security,"* i.e., the property subject to the loan.

In exercising this power, the beneficiary was expressly authorized to "enter upon said property for such purposes" and "pay necessary expenses, *employ counsel and pay his reasonable fees."* (Italics added.)

Clause 7 requires the trustor "To pay immediately upon demand all sums expended under the terms of this Deed of Trust by Beneficiary. . . ."

When the loans became delinquent and the trustor failed to perform the acts provided for in said loan agreements and the deeds of trust, the beneficiary employed legal counsel to represent and advise it in connection with the entire loan transaction and thereby incurred an expense for such legal services.

The trustor's successors, plaintiffs herein, dispute their liability for this expense, as well as for the additional interest charge made by the beneficiary-loan association on account of the trustor's failure to make the payments as called for by the respective notes.

The beneficiary included these two items in its demand at the foreclosure sale subsequently held by the trustee on October 24, 1960 and the proceeds of said sale were sufficient to satisfy such demand in full.

Plaintiffs' action seeks to recover from defendant Founders Savings and Loan Association, into which Richmond Savings and Loan Association was thereafter merged, and defendant Solano County Title Company, substituted trustee under the deeds of trust, the respective amounts of the attorneys' fee and the additional or "late charges" of interest.

The trial court held that the fee was reasonable and payable out of the sale proceeds and that the late charges were valid. Plaintiffs appeal from the judgment. (It was stipulated that plaintiffs succeeded to the rights of the original trustor prior to the trustee's sale.)

*Issues*: Appellants state that "The only question . . . is whether or not the charges made by Richmond Savings and Loan Association for attorneys' fees and late charges were improper, and if so, in what amount."

### Attorneys' Fees

By the early part of 1960, the payments on the loans were delinquent and the loan association became quite concerned. It employed the law firm of Marcollo, Angell and Adams to represent and advise it in connection with all matters pertaining to the subject loans.

The parties stipulated in writing at the trial that "at all times when legal services were performed for the legal fees referred to in said stipulation, claims for labor performed and materials furnished in connection with the real property referred to in said stipulation had not been paid, and mechanics liens had been filed against said real property (except in connection with loans 348 through 352, 363 and 364). During said period, construction upon said real property was not completed in accordance with the building loan agreements referred to in said stipulation."

These breaches of the trustor's obligations clearly authorized the employment of legal counsel by the beneficiary "to protect the security" for its loan. The beneficiary's executive vice-president and manager, Rider H. Myers, testified that he deemed that this was necessary and the trial court approved of his decision, as we do.

The attorneys actually rendering the legal services were Angell, Sr., Marcollo, and Angell, Jr. The Angells specialize in representing building and loan associations and represent a large number of them.

One of the first steps taken by the attorneys was to prepare and record notices of default under each of the 17 deeds of trust and examine the foreclosure reports issued by the title company with respect to each. This included checking assessment bonds for delinquencies. At this time, the loan association was billed for and paid $850 for such services.

Among the other services rendered by said attorneys were those in connection with the question as to whether vandalism was covered by the insurance required to be carried on the subject property because of the stoppage of construction and whether the insurance carrier was entitled to cancel the vandalism provision in the policies.

Some of the unpaid materialmen were attempting or threatening to remove some of the fixtures, such as cabinets and furnaces installed by them in some of the houses which had been wholly or partially completed. These had to be warned against such attempts. Time was spent in getting back some of the materials removed.

There were a number of meetings held with general creditors, unpaid subcontractors, and other persons interested in refinancing and completing the project. Difficulty was also encountered with the holders of mechanics' liens and others who threatened to file such liens.

The services rendered by the attorneys extended over a period of six months and concluded with the foreclosure proceedings incident to the completion of the trustee's sale on October 24, 1960.

Shortly prior to such sale, the trustee requested a written itemized statement from the loan association of its demand as to each of the 17 lots to be sold. The association requested the attorneys to submit a statement of the balance of their fees.

The attorneys had spent a total of 231.5 hours of billable time. A ''billable hour'' was defined as being an hour actually spent on the matter being handled. The customary charge made by the senior partners, Angell Sr. and Marcollo, was $40 an hour and that of Angell, Jr., was $30 an hour. The hours so spent by Angell, Sr., Marcollo, and Angell, Jr., were 72, 25, and 134.5, respectively. Computed at the foregoing rate, the total charge would have been $7,915.

Angell, Jr. testified that there was a discussion with Mr. Myers concerning the amount ''we were going to bill,'' that his law firm felt ''that the association was going to lose on these houses and that the association was very small and couldn't afford it,'' and that the balance of their bill was therefore reduced to $5,100. (The total fee of $5,950 would thus represent a charge averaging approximately $26 an hour.) Marcollo and Angell, Jr., both testified that the services rendered were necessary and were reasonable as to amount.

Appellants make no contention on appeal that the amount charged by Marcollo, Angell and Adams for their services is not reasonable. ■ Their contention is that the nature of the services rendered is such that the trustor is not liable under the terms of the deeds of trust for the payment thereof.

We do not think that such a restricted application of the attorney's fee provision in the deeds of trust is reasonable.

The evidence is that the major portion of the fees incurred were for services which the beneficiary requested and ''deem [ed] necessary to protect the security.'' The deeds of trust authorized the beneficiary to ''employ counsel'' to perform such services. The main objective was to maintain the security in such condition that the lots could be sold at the trustee's

sale under Civil Code section 2924 at prices which would satisfy the indebtedness of the trustor, or his successors, to the beneficiary. Litigation was to be avoided, if possible:

This objective was accomplished. There were a number of bidders at the sale and 11 of the lots were purchased by outside bidders, leaving the loan association with only six lots on its hands.

We agree with the trial court's interpretation of the provisions of the deed of trust and, in particular, with the following findings: "RICHMOND SAVINGS AND LOAN ASSOCIATION, to protect the security for the said loans, and in exercising its powers under the terms of the deeds of trust, thereafter employed counsel to perform legal services in connection therewith. . . . The attorneys' fees which were charged in each case were reasonable in amount and were expended under and in accordance with the terms of the deeds of trust.''

Appellants' reference to various statutes has no relevancy.

Civil Code section 2924c concerns the amount of the attorneys' fees upon reinstatement of the loan within three months after the recording of the notice of default. There was no reinstatement here.

Code of Civil Procedure section 580c refers to attorneys' fees for conducting the sale. Here the sale was conducted by the substituted trustee, Solano Title Company, and there were no attorney's fees charged for this service.

Code of Civil Procedure sections 725a and 726 do not apply, since they relate only to judicial sales and here there was none.

The fees here are governed, not by the above code sections or by any other statute, but by the *contract* regarding attorney's fees, as set forth in the deeds of trust. (Code Civ. Proc., § 1021.)

Appellants complain that the allocation of one-seventeenth of the total fees of $5,950, or $350, against each lot is not proper because it does not take into account that the services required were not the same as to *all* lots. For example, appellants point out that mechanics' liens were filed against only 11 of the 17 lots.

However, the ownership of the equity in *all* of the lots has always been held by a *single entity*. It is thus understandable that appellants do not explain how or in what manner they were prejudiced by said allocation or how they would have been benefited by the type of allocation suggested by them.

The total fee to be paid by the beneficiary would be the same in either instance.

Angell, Jr., testified that "we didn't determine our fee on a per lot basis" but that, when discussing the fee with the loan association the figure agreed upon was made divisible by 17 and that when they prepared the 17 letters of instructions to the trustee to use at the foreclosure sale, each lot was debited with $350 for attorneys' fees. This allocation was made at the request of the beneficiary.

 Appellants' final attack upon the allowance of attorney's fees is that there is no evidence to support the trial court's finding that the services in question included the "stopping [of] vandalism upon and the removal of fixtures from the real property securing the said loans. . . ."

Angell, Jr., and Myers both testified that such services were rendered. As Angell, Jr., stated, "We were having problems interspersed here all the time with vandalism. . . . [T]he insurance carrier for Muth attempted to or did cancel the insurance policy, at least as to the vandalism clauses in there, because the houses—construction had stopped. We had problems with some of the subcontractors moving materials and equipment from the houses."

In any event, the instant contention is pointless since appellants state in another part of their brief that they "have not argued the point [i.e., the reasonableness of the *total* amount charged for attorney's fees] on this appeal."

### Late Charges

 Each of the 17 notes provides that, "in the event any installment shall not be paid when due," the obligor thereunder shall pay "an additional interest charge upon the balance of said principal sum then unpaid at the rate of one-half of 1 percent per month from the date such installment was due until the same shall be paid."

Application of this provision resulted in an additional charge being made against each of the 17 lots, varying in amount from $202.92 to $330.84, and totaling $4,709.52.

The correctness of these figures is not questioned. The issue is whether such a charge violates Civil Code section 1670, which provides: "Every contract by which *the amount of damage to be paid,* or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section." (Italics added.)

Since we hold that section 1670 is not applicable, we need not discuss the exception thereto contained in section 1671. *Thompson* v. *Gorner,* 104 Cal. 168 [37 P. 900, 43 Am.St.Rep. 81], and *Finger* v. *McCaughey,* 114 Cal. 64 [45 P. 1004], are directly in point and are controlling herein.

*Thompson* and *Finger* hold that the provision in question is valid, being simply one to pay a higher interest rate upon the contingency of a default in payments, rather than a penalty such as is proscribed by section 1670.

In *Thompson, supra,* the interest clause in the promissory note provided : " 'With interest [on the principal] . . . at the rate of *eight* per cent per *annum,* payable monthly, in advance, and if said principal or interest is not paid as it becomes due it shall thereafter bear interest at the rate of one per cent per month [or *twelve* per cent per *annum*].' " (Italics added.)

The Supreme Court said: "When this appeal was in department [4 Cal. Unrep. 606] it was held that the one per cent clause in the note was not to be treated as a penalty, but as a contract to pay one per cent per month interest upon a contingency shown to have happened;"

The court expressly stated that it was satisfied with the conclusion reached in department and adhered to it. (104 Cal., at p. 170.)

In the *Finger* case, *supra,* 114 Cal. 64, the note contained the following provision: " 'With interest from date at the rate of *ten* per cent per annum, provided this note is paid at maturity, but, if not paid at maturity, then it shall bear interest at the rate of *twelve* per cent per annum from its date until paid, and, if the interest is not paid at the end of one year from date, it shall become a part of the principal and bear twelve per cent interest per annum.' " (Italics added.)

This clause was attacked as being " 'a penalty and void under section 1670 of the Civil Code.' " The Supreme Court rejected this contention, stating: "[T]he rate of interest agreed upon in writing must be allowed according to the terms of the agreement until the entry of judgment (Civ. Code, sec. 1918) ;[1] and it is competent for the parties to agree

[1]The decision in no way depends upon section 1918, which provided that parties could agree in writing for the payment of any rate of interest. The section was repealed with the adoption of the usury laws. (Stats. 1919, p. lxxxiii, § 4.) Article XX, section 22 of the California Constitution, adopted November 6, 1934, provides that none of the interest rate restrictions provided for therein shall apply to any building and loan association.

upon an increased rate contingent upon nonpayment of either principal or interest when due (*Thompson* v. *Gorner*, 104 Cal. 168 [37 P. 300, 43 Am.St.Rep. 81]); we see no substantial ground for distinguishing this case from that."

A few years later, in discussing the Thompson and Finger cases, the Supreme Court said, in *Yndart* v. *Den*, 116 Cal. 533, 541 [48 P. 618, 58 Am.St.Rep. 200]: "In the two later cases [*Thompson* and *Finger*] it may well be said that upon the contingency named—nonpayment of principal when due—it, the principal, shall bear the increased rate of interest. It is a part of the contract as to payment of the principal, and it is as much to be regarded as the part relating to the lower rate; both rates are given, one to be in one event, and the other in another."

■ Appellants argue that *Thompson* and *Finger were* wrongly decided by the Supreme Court but admit that neither has ever been disapproved or overruled. We are therefore bound to follow the law as enunciated therein. (*Auto Equity Sales, Inc.* v. *Superior Court*, 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 24, 1968. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.