[Civ. No. 33833. Second Dist., Div. Four. Nov. 7, 1969.]

LARRY WALSH, Plaintiff and Appellant, v.
GLENDALE FEDERAL SAVINGS & LOAN ASSOCIATION,
Defendant and Respondent.

## COUNSEL

Phill Silver for Plaintiff and Appellant.

William W. Berryhill for Defendant and Respondent.

## OPINION

**DUNN, J.**—This appeal is from a summary judgment favoring respondent. The circumstances giving rise to the controversy, as disclosed by the pleadings and declarations, are as follows:

On January 10, 1964, appellant and his wife were indebted to respondent in the amount of $31,600, evidenced by promissory notes secured by a first deed of trust. The notes contained the following provision: "Undersigned agrees, in the event any installment shall not be paid when due, to pay the holder at its option and without notice, an additional interest charge upon the balance of said principal sum then unpaid at the rate of one-half of one percent per month from the date such installment was due until the same shall be paid."

On July 16, 1964, respondent informed appellant and his wife that they were delinquent a total of $468.98 on their June and July 1964 payments, that they were subject to a late charge of $31.47 and they risked the possibility of a foreclosure.

Appellant applied to a savings and loan association and to a mortgage company for sufficient funds to refinance the loan. Each of these prospective lenders requested information from respondent concerning the unpaid balance due. As a result of information received, each of the prospective lenders was alleged to have rejected appellant's loan application.

Appellant failed to pay the August 1964 installment and on August 17th respondent notified appellant that late charges for that delinquency would be assessed at the full amount specified in the note (one-half of one percent per month on the unpaid principal balance), which was $157.33 per month based on the principal balance at that time.

On December 17, 1964, appellant finally paid respondent the overdue installments for the months of June through December 1964. The total late-charge interest for such payments was $954.46 and was also paid. Thereafter, appellant again fell behind in his payments. He obtained refinancing from another source and in March 1965 respondent was paid the entire principal and interest. As the installments for January and February 1965

were not paid until March, respondent collected additional late-charge interest in the sum of $311.52.

In 1966 appellant filed a complaint and first amended complaint for damages alleging fraud and interference with business relations. The theory of these complaints was that respondent had wrongfully prevented appellant from obtaining refinancing by giving the prospective lenders false and fraudulent information concerning contemplated foreclosure proceedings and appellant's credit standing. Respondent's demurrers to these were sustained with leave to amend.

Thereafter appellant filed a second amended complaint. The allegations in its first cause of action were substantially the same as those of the original and first amended complaints. Respondent's demurrer was sustained with leave to amend.

In a third amended complaint, appellant again alleged wrongful interference with his relationship with prospective refinancing agencies. Except for the addition of certain specifics, such as the names of the prospective lenders and the dates on which appellant contacted them, the allegations are not greatly different from those in the second amended complaint. A second count for unjust enrichment was also pleaded.

Respondent's general demurrer to the first cause of action was sustained without leave to amend, and its demurrer to the second cause of action for unjust enrichment ultimately was sustained but with leave to amend.

Appellant then filed fourth and fifth amended complaints, each containing two causes of action denominated "common counts." They alleged that respondent demanded from appellant the sum of $1,265.98 as a "penalty" for appellant's delinquencies on loan payments and that such sum was paid to respondent. It was further alleged respondent was not legally entitled to the $1,265.98, and held the same for the use and benefit of appellant. The fifth amended complaint added an allegation that respondent acted with malice, oppression and fraud and by reason thereof appellant was entitled to punitive damages.

Respondent moved for an order dismissing the fifth amended complaint and for summary judgment and the court granted the motion.

Appellant now makes the following contentions: The trial court (1) erred in granting the motion for summary judgment, and (2) abused its discretion in sustaining, without leave to amend, the general demurrer to the first cause of action in the third amended complaint.

 I. *Did the Trial Court Err in Granting the Motion for Summary Judgment?*

Code of Civil Procedure, section 437c, relating to summary judgments, provides in pertinent part: ". . . [I]f it is claimed the action has no merit, . . . on motion . . . supported by affidavit of any person or persons having knowledge of the facts, . . . the complaint may be dismissed and judgment may be entered, in the discretion of the court unless the other party, by affidavit or affidavits shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact."

 The issue to be determined by the trial court in considering a motion for summary judgment is whether the party opposing the motion has presented any facts which give rise to a triable issue, but the court may not pass upon the issue itself. *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Malone* v. *Jones* (1962) 208 Cal.App.2d 343, 345 [25 Cal.Rptr. 262]; *Balling* v. *Finch* (1962) 203 Cal.App.2d 413, 417 [21 Cal.Rptr. 490]. Whether a triable issue of fact exists is determined from the affidavits of the parties. *People* ex rel. *Mosk* v. *City of Santa Barbara* (1961) 192 Cal.App. 2d 342, 349 [13 Cal.Rptr. 423]; *Enos* v. *Foster* (1957) 155 Cal.App.2d 152, 157 [317 P.2d 670]. The affidavits of the moving party must be strictly construed, and those of his opponent liberally construed. *Pettis* v. *General Tel. Co.* (1967) 66 Cal.2d 503, 505 [58 Cal.Rptr. 316, 426 P.2d 884]; *Dreyfuss* v. *Burton* (1966) 246 Cal.App.2d 629, 631 [54 Cal.Rptr. 843]. If the affidavits so construed present a triable issue of fact, summary judgment may not be granted. *Fugate* v. *Cook* (1965) 236 Cal.App.2d 700, 702 [46 Cal.Rptr. 291]; *Gorham* v. *Taylor* (1959) 176 Cal.App.2d 600, 602 [1 Cal.Rptr. 546]. However, if the affidavits do not present any triable issue of fact the problem is resolved into a question of law (*Vallejo* v. *Montebello Sewer Co.* (1962) 209 Cal.App.2d 721, 730 [26 Cal.Rptr. 447]; *Beach* v. *Arblaster* (1961) 194 Cal.App.2d 145, 160 [14 Cal.Rptr. 854], and summary judgment is proper (*West* v. *Guy F. Atkinson Constr. Co.* (1967) 251 Cal.App.2d 296, 298 [59 Cal.Rptr. 286]; *Zaluskey* v. *Mundt* (1966) 240 Cal.App.2d 713, 715 [49 Cal.Rptr. 921], cert. denied (1966) 385 U.S. 871 [17 L.Ed.2d 98, 87 S.Ct. 142], rehearing denied (1967) 385 U.S. 1044 [17 L.Ed.2d 688, 87 S.Ct. 778]; *Pacific Inter-Club Yacht Assn.* v. *Richards* (1961) 192 Cal.App.2d 616, 620 [13 Cal.Rptr. 730]. ██ ██ On appeal from a summary judgment, an appellate court is limited to the facts shown by the affidavits, and is to determine only whether such facts give rise to a triable issue (*Dudum* v. *City of San Mateo* (1959) 167 Cal.App.2d 593, 598 [334 P.2d 968]; and in order for a factual issue to preclude entry of summary judgment, such issue must be material (*Pettus* v. *Standard Cabinet Works* (1967) 249 Cal.App.2d 64, 69 [334 P.2d 968]; *Spencer* v. *Hibernia Bank* (1960) 186

Cal.App.2d 702, 713 [9 Cal.Rptr. 867], appeal dismissed, cert. denied (1961) 368 U.S. 2 [7 L.Ed.2d 16, 82 S.Ct. 15]).

In support of its motion for summary judgment, respondent filed the declaration of E. L. Miller, a vice president of respondent. He stated: respondent is not a banking institution, but a federal savings and loan association chartered under the laws of the United States; on August 1, 1960, respondent made a loan to Greenwood, a partnership [appellant's predecessor in interest], evidenced by a promissory note and secured by a deed of trust; on December 10, 1962, and January 10, 1964, respondent made additional loans to appellant and his wife, each loan being evidenced by a promissory note secured by the same trust deed; concurrently with the execution of each note, and on the reverse side thereof, appellant and his wife executed agreements consolidating the unpaid balance with the new loan represented by each note;[1] the monthly installments for the period of June through December 1964 on the loan so consolidated were not paid until December 17, 1964; the unpaid balance of the loan as of May 15, 1964, was $31,466.05; late-charge interest due and paid, computed at the rate of ½ of 1 percent per month on the unpaid balance was $157.33 per month for a total of $954.46; the loan balance as of December 15, 1964, was $31,151.54; the monthly installments for the period January-March 1965 were not paid until March 16, 1965; additional interest due because of such late payment, computed at the agreed rate, was $155.76 per month for a total of $311.52 and was paid; and neither declarant nor respondent at any time acted with malice or oppression or for the purpose of defrauding appellant.

In his declaration[2] in opposition to the motion for summary judgment, appellant states: he executed the three notes in favor of respondent; he became delinquent in the June and July 1964 payments, totaling $468.98; respondent informed him of the two months' delinquency on August 10, 1964, and that late charges totaling $62.94 were also due; on August 17, 1964, respondent informed him that it exercised its option under the notes to impose a late charge of ½ of 1 percent per month on all delinquent payments and that the amount of such charge, based on the present principal balance of the loan, was $157.33; this was the first time respondent had elected to assess such late charges on the entire unpaid

[1]Attached to the declaration are copies of all three promissory notes, and copies of the consolidation agreements on the reverse side of the two notes executed by appellant and his wife.

[2]The declaration was not included in the record on appeal. Appellant stated in his opening brief that an application would be made to augment the record to include the declaration, but no such application has been made. We therefore obtained the superior court file which is now a part of the record on appeal. Appellate rule 12(a). The laxity of appellant's counsel is excused but not commended.

principal of the notes; subsequently respondent collected $943.98 in late-charge payments at $157.33 each, plus one payment of $10.48 [totaling $954.46]; later, respondent received from appellant two additional late-charge payments of $155.76 each [totaling $311.52]; respondent was thus paid a total of $1,265.95 [*sic*] late-charge penalties.

These declarations do not present any triable, material issue of fact. The parties agree that on one occasion appellant paid respondent late charges in the amount of $954.46 for six months' delinquent payments, and on another date late charges in the amount of $311.52 for two months' delinquent payments, a total of $1,265.98. Thus, the facts are not in dispute.

There remains only the legal issue presented by the fifth amended complaint. We resort, as we may, to the pleadings for the purpose of defining such issue. *University of Southern Cal.* v. *Weiss* (1962) 208 Cal.App.2d 759, 766 [25 Cal.Rptr. 475]; *Family Service Agency of Santa Barbara* v. *Ames* (1958) 166 Cal.App.2d 344, 348 [333 P.2d 142]. This legal question is: could respondent lawfully assess late-charge interest upon the entire unpaid principal of the loan or does this constitute an illegal penalty?

It is the rule in this state that late-charge interest is not in the nature of a penalty, and is valid. *Finger* v. *McCaughey* (1896) 114 Cal. 64, 66 [45 P.1004]; *Thompson* v. *Gorner* (1894) 104 Cal. 168, 170 [37 P. 900]; *O'Connor* v. *Richmond Sav. & Loan Assn.* (1968) 262 Cal.App.2d 523, 529-531 [68 Cal.Rptr. 882]. The *O'Connor* case contains a complete discussion of the law upon the subject, including the pronouncements of the *Finger* and *Thompson* cases. In *O'Connor,* it was held that the following provision in a promissory note is valid: "In the event any installment shall not be paid when due" the obligor thereunder shall pay "an additional interest charge upon the balance of said principal sum then unpaid at the rate of one-half of 1 percent per month from the date such installment was due until the same shall be paid."[3] In holding such provision valid, the court stated (at pp. 529-531 of 262 Cal.App.2d): ". . . The issue is whether [an additional interest charge] violates Civil Code section 1670, which provides: 'Every contract by which *the amount of damage to be paid,* or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section.' (Italics added.)

"Since we hold that section 1670 is not applicable, we need not discuss the exception thereto contained in section 1671. *Thompson* v. *Gorner,* 104

---

[3]The quoted provisions are nearly identical with those contained in the notes in our case.

Cal. 168 [37 P. 900, 43 Am.St.Rep. 81], and *Finger* v. *McCaughey,* 114 Cal. 64 [45 P. 1004], are directly in point and are controlling herein.

"*Thompson* and *Finger* hold that the provision in question is valid, being simply one to pay a higher interest rate upon the contingency of a default in payments, rather than a penalty such as is proscribed by section 1670.

"In *Thompson, supra,* the interest clause in the promissory note provided: ' "With interest [on the principal] . . . at the rate of *eight* percent per *annum,* payable monthly, in advance, and if said principal or interest is not paid as it becomes due it shall thereafter bear interest at the rate of one percent per month [or *twelve* percent per *annum*]." ' (Italics added.)

"The Supreme Court said: 'When this appeal was in department [4 Cal. Unrep. 606] it was held that the one percent clause in the note was not to be treated as a penalty, but as a contract to pay one percent per month interest upon a contingency shown to have happened;'

"The court expressly stated that it was satisfied with the conclusion reached in department and adhered to it. (104 Cal. at p. 170.)

"In the *Finger* case, *supra,* 114 Cal. 64, the note contained the following provision: ' "With interest from date at the rate of *ten* percent per annum, provided this note is paid at maturity, but, if not paid at maturity, then it shall bear interest at the rate of *twelve* percent per annum from its date until paid, and, if the interest is not paid at the end of one year from date, it shall become a part of the principal and bear twelve per cent interest per annum." ' (Italics added.)

"This clause was attacked as being ' "a penalty and void under section 1670 of the Civil Code." ' The Supreme Court rejected this contention, stating: '[T]he rate of interest agreed upon in writing must be allowed according to the terms of the agreement until the entry of judgment (Civ. Code, § 1918); and it is competent for the parties to agree upon an increased rate contingent upon nonpayment of either principal or interest when due (*Thompson* v. *Gorner,* 104 Cal. 168 [37 P. 300, 43 Am.St.Rep. 81]); we see no substantial ground for distinguishing this case from that.' "

Appellant contends that *Thompson* and *Finger, supra,* are not controlling because they were decided under Civil Code, section 1918, which provided that parties could agree in writing for the payment of any rate of interest, and which was repealed by the adoption of the usury laws (Stats. 1919, p. lxxxiii, § 4). However, the court in *O'Connor, supra,* points out by footnote at page 530 that the decision in the *Finger* case "in no way depends upon section 1918," and moreover that "Article XX, section 22

of the California Constitution, adopted November 6, 1934, provides that none of the interest rate restrictions provided for therein shall apply to any building and loan association."

Appellant's contention that the court in *O'Connor* erred in stating that the *Thompson* and *Finger* decisions were not based on Civil Code section 1918 is without merit or support. He has confused the proposition that the allowable rate of interest was unlimited under former Civil Code, section 1918 with the proposition that a provision in a promissory note for increased interest upon default in payments is not a penalty. ▆ The repeal of Civil Code, section 1918 (and enactment of usury laws in West's Civ. Code Ann. § 1916-1 et seq. [Stats. 1919, p. lxxxiii]), meant that the allowable rate of interest was no longer unlimited; but its repeal did not alter the law that a provision for increased interest is not in the nature of a penalty. Citing *Knight* v. *Marks* (1920) 183 Cal. 354, 357 [191 P. 531], and *McCarthy* v. *Tally* (1956) 46 Cal.2d 577, 583 [297 P.2d 981], appellant states that the Supreme Court interprets penalties as illegal. However, these cases are not in point, deciding only that provisions in a lease for liquidated damages ordinarily will not lie for failure to pay rent.

We conclude the trial court properly ordered summary judgment for respondent.

▆ II. *Did the Trial Court Commit an Abuse of Discretion in Sustaining, Without Leave to Amend, the General Demurrer to the First Cause of Action of the Third Amended Compaint?*[4]

The first cause of action of the third amended complaint was for alleged wrongful interference with prospective business relations. It alleged that two lending institutions orally agreed to loan appellant funds sufficient to refinance the first deed of trust held by respondent; that each of these prospective lenders requested from respondent information concerning the real property subject to the deed of trust and the unpaid balance owing by appellant on the note; that respondent falsely and fraudulently and in a willful attempt to interfere with appellant's opportunity to obtain refinancing of his obligation to respondent, told the prospective lenders that appellant was an unreliable business risk due to a record of current and past delinquencies, and falsely and fraudulently misrepresented the amounts of money owing by appellant and refused to state the true amount; that by reason of such acts, the prospective lenders rejected appellant's application for loans; that respondent's true purpose and intent was to

[4]While an order sustaining a demurrer without leave to amend is nonappealable (Code Civ. Proc., § 904.1; *Evola* v. *Wendt Constr. Co.* (1958) 158 Cal.App.2d 658 [323 P.2d 158]; 3 Witkin, Cal. Procedure (1954) Appeal, §§ 19, 2162) such order may be reviewed on appeal from a judgment (Code Civ. Proc., § 956) even though no request was made to amend. (Code Civ. Proc., § 472c.)

prevent appellant from refinancing his loan in order that respondent might acquire appellant's property for below its market value at a forced sale under the deed of trust; that respondent directly interfered with appellant's business relationship with the prospective lenders; and that appellant was damaged as a proximate result of respondent's wrongful interference.

In order that an action may lie for the intentional interference with a contractual relationship by a third person, such interference must be accomplished either by unlawful means or by means otherwise lawful when there is lack of sufficient justification. *Herron* v. *State Farm Mut. Ins. Co.* (1961) 56 Cal.2d 202, 205 [14 Cal.Rptr. 294, 363 P.2d 310]; *Lipman* v. *Brisbane Elementary School Dist.* (1961) 55 Cal.2d 224, 232 [11 Cal. Rptr. 97, 359 P.2d 465]; *Fifield Manor* v. *Finston* (1960) 54 Cal.2d 632, 635 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R. 813].

The means by which respondent allegedly prevented appellant from obtaining loans consisted of furnishing advice to the prospective lenders. Since this is not in itself unlawful, it does not constitute actionable interference with appellant's prospective business relations unless respondent acted without sufficient justification.

Justification is an affirmative defense to an action for intentional interference with a contractual relationship; but since some justification appeared on the face of the third amended complaint, it may be considered as supporting the trial court's action in sustaining the general demurrer to the first cause of action. *Herron* v. *State Farm Mut. Ins. Co., supra,* at p. 207. However, where only part of the facts necessary to an affirmative defense appear in a complaint, the complaint is not rendered vulnerable to a general demurrer. *Matteson* v. *Wagoner* (1905) 147 Cal. 739, 744 [82 P.2d 436].

The elements of justification for intentional interference with business relations by the giving of advice are set forth as follows in volume 4, Restatement of Torts (1939) § 772: "One is privileged purposely to cause another not to perform a contract, or enter into or continue a business relation, with a third person by giving honest advice to the other within the scope of a request for advice made by him, except that, if the actor is under a special duty to the third person with reference to the accuracy of the advice, he is subject to liability for breach of that duty." Comment a. states: "The only requirements for [existence of the privilege], except when the actor is under a duty to the third person to exercise reasonable care, are (1) that advice be requested, (2) that the advice given be within the scope of the request and (3) that the advice be honest. . . . If these conditions are present, it is immaterial that the actor also profits by the advice or that he dislikes the third person and takes much delight in the harm caused to him by the advice."

██ All but one of the foregoing conditions are met by the allegations in appellant's complaint: respondent furnished information to prospective lenders in response to requests by them; the information furnished was within the scope of the request; the information that appellant was a bad and unreliable credit risk was not false, as it is verified by his own oft-repeated allegation that he was delinquent in payments on the loan. Respondent's refusal to give correct information as to the amount owed it by appellant is immaterial, since it does not appear that respondent was under a duty to furnish any information at all.

The one element missing is that of "honest" advice. Insofar as appellant's third amended complaint alleged respondent "falsely and fraudulently misrepresented the amounts of money owed on said property," such would charge dishonesty or lack of good faith. Comment c. to section 772 of the Restatement of Torts reads: "Ordinarily it is sufficient for the existence of this privilege that the actor gave honest advice within the scope of the request made. Whether the advice was based on reasonable grounds and whether the actor exercised reasonable diligence in ascertaining the facts are questions important only in determining his good or bad faith. But no more than good faith is ordinarily required." Just what was allegedly stated by respondent regarding the amount owed on the property is not spelled out in the complaint.

It must now be determined whether the trial court erred in sustaining the demurrer without leave to amend. ██ A reviewing court may not reverse unless an abuse of discretion is manifest. *Schultz* v. *Steinberg* (1960) 182 Cal.App.2d 134, 140 [5 Cal.Rptr. 890]; *Spencer* v. *Crocker First Nat. Bank* (1948) 86 Cal.App.2d 397, 400-401 [194 P.2d 775]. The burden of showing such abuse rests upon the appellant (*Harrison* v. *Hanson* (1958) 165 Cal.App.2d 370, 376 [331 P.2d 1084]).

Here, appellant alleged, in effect, that respondent gave dishonest advice to prospective lenders, causing them to refuse loans to appellant. Under the rules outlined, a cause of action was stated. Whether appellant can defeat another motion for summary judgment or can prove his allegations at trial are not matters for present concern. We hold only that he is entitled to his day in court on the issues framed by the first cause of action of his third amended complaint.

To summarize, the trial court's ruling in favor of respondent on the two causes of action pleaded in the fifth amended complaint was proper. But, in the light of our conclusion that the first count of the third amended complaint stated a cause of action, the trial court erred in ultimately dismissing the entire complaint and ordering judgment for respondent.

The judgment is reversed and the cause remanded with instructions to

the trial court: (1) to enter its order overruling respondent's general demurrer to the first cause of action of the third amended complaint and allowing respondent time to answer; and (2) in finally determining the matter, to enter judgment for respondent as to the two causes of action pleaded in appellant's fifth amended complaint.

Jefferson, Acting P. J., and Kingsley, J., concurred.