[L.A. No. 30107. In Bank. July 18, 1973.]

ROBERTA L. GARRETT et al., Plaintiffs and Appellants, v.
COAST AND SOUTHERN FEDERAL SAVINGS AND
LOAN ASSOCIATION, Defendant and Respondent.

## COUNSEL

Jackson & Lober and David G. Jackson for Plaintiffs and Appellants.

Alvin S. Kaufer as Amicus Curiae on behalf of Plaintiffs and Appellants.

Harry Pflaumer and Arthur E. White for Defendant and Respondent.

## OPINION

**WRIGHT, C. J.**—Plaintiffs in a class action appeal from an order of dismissal entered after the court sustained, without leave to amend, defendant's demurrer on the ground that the complaint failed to state a cause of action.

■ Preliminarily, we observe that we are limited on this appeal to a determination of the sufficiency of the complaint as a matter of law and that for such purpose we treat the demurrer as admitting all allegations of material facts properly pleaded but not admitting contentions, deductions, or conclusions of fact or law. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]; 3 Witkin, Cal. Procedure (2d ed. 1971) § 800, p. 2413).

Plaintiffs allege that they are or were obligors under promissory notes secured by deeds of trust in favor of defendant savings and loan association; that each of them has been assessed by reason of his failure to have made timely installment payments, certain sums designated as late charges; and that each such charge is a percentage of the unpaid principal balance of the loan obligation for the period during which payment was in default. Plaintiffs seek to recover sums paid in satisfaction of the charges, contending that they constitute assessments which cannot qualify as liquidated damages and thus are void under Civil Code section 1670.[1] For the reasons

---

[1] Civil Code section 1670 provides: "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section." Section 1671 defines and authorizes a liquidation of damages, stating, "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

Unless otherwise herein provided all statutory references are to sections of the Civil Code.

hereinafter stated we hold that plaintiffs have stated a cause of action and reverse the order of dismissal.

Plaintiffs' action is brought on behalf of themselves and other similarly situated obligors who within the applicable period of limitations (Code Civ. Proc., § 382) have paid late charges to defendant.[2] They allege that of approximately 32,000 obligors some 5,000 have paid late charges totaling $1,900,000 during the four-year period immediately preceding the filing of the complaint. The promissory note signed by each obligor allegedly includes the following or similar provisions: "The undersigned further agrees that in the event that payments of either principal or interest on this note becomes in default, the holder may, without notice, charge additional interest at the rate of two (2%) per cent per annum on the unpaid principal balance of this note from the date unpaid interest started to accrue until the close of the business day upon which payment curing the default is received."[3]

■ In order to evaluate the legality of a provision for late charges we must determine its true function and character. If it is as plaintiffs contend a stipulation for ascertaining damages in anticipation of breach its validity must be tested against sections 1670 and 1671. Defendant seeks to avoid the question of damages by maintaining that the lending agreement, to the extent that it requires the payment of additional interest, merely gives a borrower an option of alternative performance of his obligation. If he makes timely payments, interest continues at the contract rate; if, however, the borrower elects not to make such payments, interest charges for the loan are to be increased during the period of optional delinquency. In justification of such a construction of the provision defendant refers us to *Walsh* v. *Glendale Fed. Sav. & Loan Assn.* (1969) 1 Cal. App.3d 578, 585 [81 Cal.Rptr. 804] which relied inter alia on our decisions in *Finger* v. *McCaughey* (1896) 114 Cal. 64, 66 [45 P. 1004] and *Thompson* v. *Gorner* (1894) 104 Cal. 168 [37 P. 900]. (See also *O'Connor* v. *Richmond Sav. & Loan Assn.* (1968) 262 Cal.App.2d 523, 530 [68 Cal.Rptr. 882].)

---

[2]No issue is presented on this appeal as to the propriety of the class action. A second ground of defendant's demurrer was that the cause was not a proper class action but the court overruled the demurrer as to that ground.

[3]Plaintiffs allege that in practice defendant schedules all payments to be made on the 10th of each month and that if no payment is received by the 19th of the month defendant mails a notice to the late obligor stating the amount of late charge defendant will assess unless the payment has already been mailed. The amount of this charge is calculated to be a sum equal to one-twelfth of 2 percent in some cases and 1½ percent in other cases of the unpaid balance of the loan. Plaintiffs allege that this same charge is made regardless of whether the obligor makes his payment 11 days or 29 days late, or fails to make it at all in that particular month.

The *Thompson* and *Finger* cases essentially involved obligations on promissory notes which included provisions that the loan was to bear one rate of interest if paid at maturity and a higher rate of not paid when the obligation became due. An additional provision in the note in *Thompson,* not relevant to the disposition of the case, related to an increased interest rate if any installment of interest was not paid as it became due.

In *Thompson* we held that a clause in a promissory note providing for a higher rate of interest if the "principal or interest is not paid as it becomes due" is not to be treated as a penalty, but as a contract to pay such higher rate upon and commencing with the happening of one of the contingencies specified in the note, to wit, the failure to make payment of any sum when due.[4]

In *Finger* the promissory note contained a provision that in the event of default at maturity a higher interest rate would apply than if the obligation had been paid when it became due. Unlike *Thompson,* however, the higher rate was to predate the default and relate back to the full term of the note. The court in *Finger* did not distinguish *Thompson* on the differing factual circumstances and rested its holding on *Thompson* in concluding that the amount so assessed was not a penalty within the meaning of section 1670.

Neither *Finger,* and certainly not *Thompson,* stand for the proposition, as defendant would have us hold, that upon a default in the payment of an installment of a note a higher interest rate may be assessed against the *whole of the unpaid balance of the principal* of the note whether or not in default. *Thompson* held only that amounts *in default* may bear a higher interest rate from the date of the default, and *Finger* further held that amounts in default may bear a higher *and retroactive* interest rate. *Thompson* and *Finger* incorrectly have been held to stand for the proposition that "It is the rule in this state that late-charge interest is not in the nature of a penalty, and is valid" in cases where increased interest charges are assessed against the unpaid balance of the principal whether or not in default. (*Walsh* v. *Glendale Fed. Sav. & Loan Assn., supra,* 1 Cal.App.3d 578, 585; *O'Connor* v. *Richmond Sav. & Loan Assn., supra,* 262 Cal.App.2d 523, 530.) Thus defendant's argument that a borrower in default is merely exercising a valid option to elect a different perform-

---

[4]The term "penalty" has traditionally been utilized to designate, inter alia, a charge which is deemed to be void because it cannot qualify as proper liquidated damages. (See *Better Food Mkts.* v. *Amer. Dist. Teleg. Co.* (1953) 40 Cal.2d 179, 184 [253 P.2d 10, 42 A.L.R.2d 580].) We so utilize the term here; in all instances it denotes a void charge within the meaning of sections 1670 and 1671.

ance under the lending contract does find some support in the foregoing line of cases.

The mere fact that an agreement may be construed, if in fact it can be, to vest in one party an option to perform in a manner which, if it were not so construed, would result in a penalty does not validate the agreement.[5] To so hold would be to condone a result which, although directly prohibited by the Legislature, may nevertheless be indirectly accomplished through the imagination of inventive minds. ■ Accordingly, a borrower on an installment note cannot legally agree to forfeit what is clearly a penalty in exchange for the right to exercise an option to default in making a timely payment of an installment. Otherwise the legislative declarations of sections 1670 and 1671 would be completely frustrated. We have consistently ignored form and sought out the substance of arrangements which purport to legitimate penalties and forfeitures. (See *Caplan* v. *Schroeder* (1961) 56 Cal.2d 515, 519-521 [15 Cal.Rptr. 145, 364 P.2d 321]; *Freedman* v. *The Rector* (1951) 37 Cal.2d 16, 21-23 [230 P.2d 629, 31 A.L.R.2d 1].)

*Thompson* is not to the contrary. It did not involve a question of penalty. There the full amount of the note was in default and the parties contracted for an increased rate beginning with the moment of default on sums which became payable to the lender. No penalty was assessed as the borrower at the moment of default owed only what he had contracted to pay had there been no default, the principal amount plus accrued interest. If these amounts were not then paid the parties agreed that interest at the higher rate would accrue.

In *Finger*, although it purports to rely on *Thompson,* the question of a penalty was nevertheless involved. Because the increased interest rate was made retroactive the borrower, at the moment of default, became obligated for a sum *in addition* to what he had contracted to pay under the terms of the promissory note had there been no default. The validity of the provision, accordingly, should have been controlled by applicable statutory provisions relating to liquidated damages. We conclude that the *Finger* extension of the *Thompson* holding was unwarranted, and to that extent it is overruled. For similar reasons we disapprove both *Walsh* v. *Glendale Fed. Sav. & Loan Assn., supra,* 1 Cal.App.3d 578 and *O'Con-*

---

[5]For purposes of our discussion of *Thompson, Finger* and related cases we assume that the charges assessed as the result of the borrower's default cannot qualify as liquidated damages (see discussion. *infra*) and address ourselves only to the defendant's contention that such charges should not be deemed to be penalties as they were merely part of a contracted-for alternative performance.

*nor* v. *Richmond Sav. & Loan Assn., supra,* 262 Cal.App.2d 523 to the extent that they are inconsistent with our views herein.

We recognize, of course, the validity of provisions varying the acceptable performance under a contract upon the happening of a contingency. We cannot, however, so subvert the substance of a contract to form that we lose sight of the bargained-for performance. ■ Thus when it is manifest that a contract expressed to be performed in the alternative is in fact a contract contemplating but a single, definite performance with an additional charge contingent on the breach of that performance, the provision cannot escape examination in light of pertinent rules relative to the liquidation of damages. (*Paolilli* v. *Piscitelli* (1923) 45 R.I. 354, 359 [121 A. 531]; Williston on Contracts (3d ed.) § 781.)[6]

In the instant case, the only reasonable interpretation of the clause providing for imposition of an increased interest rate is that the parties agreed upon the rate which should govern the contract and then, realizing that the borrowers might fail to make timely payment, they further agreed that such borrowers were to pay an additional sum as damages for their breach which sum was determined by applying the increased rate to the entire unpaid principal balance. Inasmuch as this increased interest charge is assessed only upon default, it is invalid unless it meets the requirements of section 1671. (§§ 1670, 1671; see also *In re Tastyeast, Inc.* (3d Cir. 1942) 126 F.2d 879, 882; *Conn. Mutual Life Ins. Co.* v. *Westerhoff* (1899) 58 Neb. 379, 382 [78 N.W. 724, 79 N.W. 731]; cf. Com. Code, § 2718; *Feary* v. *Aaron Burglar Alarm, Inc.* (1973) 32 Cal.App.3d 553 [108 Cal.Rptr. 242].)

Section 1671 authorizes the assessment of agreed-upon and anticipated damages only when the fixing of the actual damages which would be sustained upon a breach would be "impracticable" or "extremely difficult." Where, as here, the issue is presented on admitted facts it is one of law and must be examined from the position of the parties at the time the contract was entered into. (*Better Food Mkts.* v. *Amer. Dist. Teleg. Co., supra,* 40 Cal.2d 179, 184, 185, 186.) ■ The party seeking to rely on a liquidated damages clause bears the burden of proof. (*Id.* at p. 185.) Because of the posture of the case before us it is not necessary that we consider issues of "difficulty" or "impracticability."

"The validity of a clause for liquidated damages requires that the parties to the contract 'agree therein upon an amount which shall be presumed

---

[6]Performance cannot be said to be in the alternative where breach of a former covenant is necessary to give effect to a later covenant. (*Stewart* v. *Bedell* (1875) 79 Pa. 336, 339.)

to be the amount of damages sustained by a breach thereof . . . .' (Civ. Code, § 1671.) This amount must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained. *(Dyer Bros. Golden West Iron Works* v. *Central Iron Works, supra,* 182 Cal. 588 [189 P. 445]; *Rice* v. *Schmid, supra,* 18 Cal.2d 382, 386 [115 P.2d 498, 138 A.L.R. 589]; Restatement, Contracts, § 339, p. 554.)" *(Better Food Mkts.* v. *Amer. Dist. Teleg. Co., supra,* 40 Cal.2d 179, 186-187.) It is abundantly apparent for the reasons which follow that the parties here have made no "reasonable endeavor . . . to estimate a fair average compensation for any loss that [might] be sustained" by the delinquency in the payment of an installment. They have, in fact, contracted for the imposition of an additional sum to be paid by the borrower under the guise of an interest charge but which, in the absence of a showing that the same bore a relationship to any loss which may be suffered, must be construed as a penalty.

■ The fundamental difference between interest and penalty charges is that interest is a measure of compensation to which an obligee is entitled while a penalty is punitive in character. *(United States* v. *Childs* (1924) 266 U.S. 304, 305 [69 L.Ed. 299, 45 S.Ct. 110].) A penalty provision operates to compel performance of an act *(Biles* v. *Robey* (1934) 43 Ariz. 276, 286 [30 P.2d 841]) and usually becomes effective only in the event of default *(Lagorio* v. *Yerxa* (1929) 96 Cal.App. 111, 117 [273 P. 856]) upon which a forfeiture is compelled without regard to the actual damages sustained by the party aggrieved by the breach *(Better Foods Mkts.* v. *Amer. Dist. Teleg. Co., supra,* 40 Cal.2d 179). The characteristic feature of a penalty is its lack of proportional relation to the damages which may actually flow from failure to perform under a contract. *(Dyer Bros. I. Wks.* v. *Central I. Wks.* (1920) 182 Cal. 588, 592-593 [189 P. 445]; *Muldoon* v. *Lynch* (1885) 66 Cal. 536, 539 [6 P. 417].)

■ Late charges in home loan contracts are presumably imposed because borrowers fail to make timely payments of their obligations.[7] Such charges serve a dual purpose: (1) they compensate the lender for its administrative expenses and the cost of money wrongfully withheld; and (2)

---

[7]Examination of a booklet issued by defendant to borrowers and which is attached as an exhibit to and incorporated in the complaint aids us in determining whether defendant is alleged to have extracted late charges as a method of procuring prompt payment. Under the section designated "Late Payment" in the booklet defendant explains: "Payments should be mailed early enough to reach us by the due date. The cost of handling delinquent payments, even when we know in advance that they will be late, amounts to more expense than most people imagine. Hence we spread the entire average expense among the customers who are late; these charges are quite high; . . ."

they encourage the borrower to make timely future payments. Whether late charges represent a reasonable endeavor to estimate fair compensation depends upon the motivation and purpose in imposing such charges and their effect. If the sum extracted from the borrower is designed to exceed substantially the damages suffered by the lender, the provision for the additional sum, whatever its label, is an invalid attempt to impose a penalty inasmuch as its primary purpose is to compel prompt payment through the threat of imposition of charges bearing little or no relationship to the amount of the actual loss incurred by the lender. (*First American Title Ins. & Trust Co.* v. *Cook* (1970) 12 Cal.App.3d 592, 596-597 [90 Cal.Rptr. 645]; *Lagorio* v. *Yerxa, supra*, 96 Cal.App. 111, 117; cf. *Clermont* v. *Secured Investment Corp.* (1972) 25 Cal.App.3d 766, 769 [102 Cal.Rptr. 340].)

The contractual provision as alleged in the complaint in the instant case provides that in the event of a late payment a borrower is to be charged an additional amount equal to 2 percent per annum for the period of delinquency assessed against the *unpaid principal balance of the loan obligation*.[8] ■ We are compelled to conclude that a charge for the late payment of a loan installment which is measured against the unpaid balance of the loan must be deemed to be punitive in character. It is an attempt to coerce timely payment by a forfeiture which is not reasonably calculated to merely compensate the injured lender.[9] We conclude, accordingly, that because the parties failed to make a reasonable endeavor to estimate a fair compensation for a loss which would be sustained on the default of an installment payment, the provision for late charges is void.

■ We do not hold herein that merely because the late charge pro-

---

[8]Such charges are not unusual in the savings and loan industry. A survey of late charges of California state licensed savings and loan associations was conducted by the state Savings and Loan Commissioner in August 1966. That survey indicated that although a majority (113) of the associations charged between 1 percent and 10 percent of the monthly payment for delinquent payments, 21 associations charged 1 percent of the unpaid balance and 11 charged a flat fee, usually $5. (Assem. Interim Com. Rep. Finance and Insurance (1969) Late Payment Fees.)

[9]Late charges are not specifically regulated in this state, and savings and loan associations are exempt from usury proscriptions. (Cal. Const., art. XX, § 22; *Lazzareschi Inv. Co.* v. *San Francisco Fed. Sav. & Loan Assn.* (1971) 22 Cal.App. 3d 303, 308 [99 Cal.Rptr. 417].) Both the Federal Housing Authority and Veterans Administration, however, regulate late charges for delinquent payments on loans subject to their controls. The FHA limits such charges to 2 percent of each payment more than 15 days late to cover the additional administrative expenses involved. (24 C.F.R. § 241.105.) Similarly the maximum late charge under loans procured through the Veterans Administration is 4 percent of any installment that is delinquent 15 days. (38 C.F.R. § 36.4212.)

vision is void and thus cannot be used in determining the lender's damages, the borrower escapes unscathed. He remains liable for the actual damages resulting from his default. The lender's charges could be fairly measured by the period of time the money was wrongfully withheld plus the administrative costs reasonably related to collecting and accounting for a late payment.[10] (See *Farthing* v. *San Mateo Clinic* (1956) 143 Cal.App.2d 385 [299 P.2d 977].)

Moreover we do not hold that had the amount of the late charges been fixed as a measure of anticipated damages in the event of a default that the provision would necessarily have violated section 1670. As indicated, liquidated damages can be validly anticipated by the parties' reasonable endeavors to do so if "extremely difficult" or "impracticable" to fix. Although we conclude on the record before us that defendant failed in its burden of establishing extreme difficulty in anticipating and fixing damages for the breach of an installment payment,[11] it is possible that on a proper showing defendant might have been able to establish the impracticability of prospectively fixing its actual damages resulting from a default in an installment payment.

The instant case suggests the impracticability under certain circumstances of fixing actual damages when the amount thereof may be small but the cost of ascertaining the same may well be in excess of a reasonable sum agreed to in advance by the parties as fair compensation.[12] We

---

[10]Defendant argues that the enactment of section 2954.5 impliedly authorized the computation of late charges by the methods currently used by it. This argument is unsupported by a reading of the statute. In section 2954.5 the Legislature dealt primarily with the need and method of notice of the assessment of late charges and the prerequisites mandated before imposition and did not consider the actual computation of such charges.

The Legislature did, however, consider computation of delinquency charges in the recently enacted Retail Installment Act. Section 1803.6 provides for payment by the buyer of a delinquency charge on each installment in default for a period of not less than 10 days in an amount not in excess of 5 percent of the due installment or $5, whichever is less. The statute also commands that only one such delinquency charge may be collected on any such installment regardless of the period during which it remains in default.

[11]Damages resulting because of the wrongful withholding of money are fixed by law (§ 3302) and the other damages resulting because of a borrower's default on an installment, such as administrative and accounting costs, would not appear to present extreme difficulty in prospective fixing. "Extreme" means "existing in the highest or greatest possible degree . . . going to great or exaggerated lengths . . . going beyond the limits of reason, necessity or propriety . . . ." (Webster's Third New Internat. Dict. (1961) p. 807.)

[12]"Impracticable" means "not wise to put into or keep in practice or effect . . . incapable of being put into use or effect or of being accomplished or done successfully or without extreme trouble, hardship or expense . . . ." (Webster's Third New Internat. Dict. (1961) p. 1136.)

could not hold as violative of section 1671 a provision for liquidated damages where it is established that the measure of actual damages would be a comparatively small amount and that it would be economically impracticable in each instance of a default to require a lender to prove to the satisfaction of the borrower the actual damages by accounting procedures. If the test of impracticability is met the court should give effect to a liquidated damages provision resulting from the reasonable endeavors of the parties to fix a fair compensation.

For the reasons stated the complaint is not vulnerable to defendant's demurrer on the ground asserted. The order of dismissal is reversed and the cause remanded to the trial court with directions to overrule the demurrer and to allow a reasonable time within which to answer or otherwise plead.

McComb, J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Files, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.