MEMORANDUM **
This case concerns the application of California’s statutory restrictions on liquidated damages clauses in the context of early termination fees. Plaintiffs entered into a defined-length contract with Defendant for the provision of internet access. The contract further provided for the payment of an early termination fee (“ETF”) if Plaintiffs chose to terminate their service before the expiration of the contract. Plaintiffs chose to terminate their service early, and so were forced to pay the ETF. Plaintiffs argue that this ETF constitutes a liquidated damages clause, and that such a clause is void under California Civil Code § 1671. The district court granted Defendant summary judgment. This Court has jurisdiction under 28 U.S.C. § 1291, and we AFFIRM the judgment of the district court in all respects.
In November of 2004, Stuart and Barbara Hutchison entered into a one-year service agreement with AT & T for the provision of telephone and high speed internet services. Pursuant to AT & T’s *333 Terms of Service, Plaintiffs were to be charged an ETF of $200 if they chose to end their service prior to the expiration of the contract period. In exchange for agreeing to this one-year duration and the accompanying ETF, Defendant waived both the cost of installation (approximately $75) and the cost of a modem (approximately $100). In addition, Plaintiff paid a monthly rate lower than what would have been charged in a month-to-month contract.
Fifty weeks after signing their contract, and two weeks before the period expired, Plaintiffs informed AT & T that they wished to terminate their service. Pursuant to the ETF provision, Plaintiffs were charged the $200 ETF fee. Plaintiffs brought suit, arguing that the ETF violated § 1671 and California’s Unfair Business Practices Act. The district judge disagreed and granted summary judgment to Defendant.
The central controversy in this case is whether the ETF imposed on Plaintiffs constitutes a liquidated damages provision that is subject to California Civil Code § 1671. The California Supreme Court addressed a similar clause in Blank v. Borden, 11 Cal.3d 963, 115 Cal.Rptr. 31, 524 P.2d 127 (1974). Blank arose from a legal action brought by a real estate broker against a property owner who violated an exelusive-right-to-sell contract. The contract provided that if the property owner chose to back out before the natural expiration of the contract, she would pay the broker a pre-determined fee. Blank concluded that “the withdrawal-from-sale clause in an exelusive-right-to-sell contract [is] not ... a void penalty provision.” Id. at 970, 115 Cal.Rptr. 31, 524 P.2d 127. It explained that the clause provided “a true option or alternative: if, during the term of an exclusive-right-to-sell contract, the owner changes his mind and decides that he does not wish to sell the subject property after all, he retains the power to terminate the agent’s otherwise exclusive right through the payment of a sum certain set forth in the contract.” Id. Such an alternative performance provision was held not to be subject to § 1671.
The same is true here. Plaintiffs availed themselves of a defined-length plan that included certain discounts on both upfront and monthly fees. Those fees would have been incurred on a month-to-month plan. They did so, however, with the knowledge that if they wished to terminate the contract early, it would result in a set fee. This presented Plaintiffs with a rational choice: they took advantage of lower fees, but with the possibility of an ETF if they cancelled the service early. Under Blank, such a clause is not a penalty provision. See also Morris v. Redwood Empire Bancorp, 128 Cal.App.4th 1305, 1315, 27 Cal.Rptr.3d 797 (2005) (“Where a contract for a specified period of time permits a party to terminate the agreement before its expiration in exchange for a lump-sum monetary payment, the payment is considered merely an alternative to performance, and not a penalty.”).
The dissent reads Blank differently. It argues that the ETF in this case, unlike the fee paid in Blank, imposed a net financial loss on Plaintiff.[1] In Blank, the property owner chose to keep the property and pay a fee, rather than sell the property. *334 Both options, according to the dissent, might appeal to a rational owner. The ETF in this case, according to the dissent, amounted to a choice between paying the ETF or simply allowing the contract to expire naturally, without any further cost.
This analysis fails to account for Blank’s admonition that it is not whether the choice is “rational” when a party makes it — e.g., at the time a consumer is considering terminating his contract early — but only whether it is rational when “viewed from the time of making the contract.” 11 Cal.3d at 971, 115 Cal.Rptr. 31, 524 P.2d 127. As noted above, when Plaintiff agreed to this contract, Defendant correspondingly agreed to waive fees amounting to $175. Defendant also agreed to charge a discounted monthly rate. Therefore, when Plaintiff chose to terminate the contract in the twelfth month, he had already accrued a benefit of more than $175. Although the record does not reflect the precise amount of the monthly discount, a discount of only $2 a month would result in Plaintiff facing equally attractive options in month 12: the discounts obtained by virtue of the year-long agreement would add up to $200, thereby offsetting the ETF. Therefore, viewed from the time of making the contract, the ETF provision provides a consumer with a rational choice.
Moreover, even if the consumer could foresee the ETF as a more expensive option than simply allowing the contract to expire, this does not doom the clause under Blank. Blank does not require than an alternative performance provision offer choices with precisely equal out-of-pocket costs.[2] On the contrary, it defines liquidated damages clauses in a far more narrow fashion. Such a clause “realistically contemplates no element of free rational choice on the part of the obligor insofar as his performance is concerned.” Id. (emphasis added). Even if the ETF were a somewhat more expensive option than permitting the agreement to expire, this does not mean that it “contemplates no element of free rational choice.” On the contrary, as the dissent explains, paying the ETF affords a consumer certain benefits, such as the ability to move without retaining internet service at a prior residence.
The dissent seeks to impose a rigidity to the “alternative performance” test that is not evident in the California Supreme Court’s opinions. On the contrary, the relevant opinions emphasize a range of different issues, all in the service of determining whether a given contract’s alternative provisions are reasonable. Given the trade-off that is manifest in the structure of this contract, it is certainly reasonable for a consumer to trade a year-long commitment for the possibility of substantial discounts over the life of the contract.
The district court correctly granted summary judgment to Defendant, and that decision is AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

. The dissent concedes that, for the majority of the contractual period, the ETF provision was a net financial benefit to consumers. This is so because choosing to terminate early in the contract, and paying the $200 fee, is less expensive than paying the remaining monthly payments. The Hutchisons' alleged financial harm occurred only because they terminated in the final month of the contract, and had in fact pre-paid the final monthly payment.

. Indeed, Blank could not do so without contradicting prior California Supreme Court case law. See Garrett v. Coast & Southern Federal Savings & Loan Assoc., 9 Cal.3d 731, 736, 108 Cal.Rptr. 845, 511 P.2d 1197 (1973) (discussing Thompson v. Gorner, 104 Cal. 168, 37 P. 900 (1894)).