The TRAVELERS INSURANCE
CO., Plaintiff,

v.

CORPOREX PROPERTIES,
INC., et al., Defendants.

Civ. A. No. 91–110.

United States District Court,
E.D. Kentucky,
at Covington.

Aug. 26, 1992.

L. Clifford Craig, Taft, Stettinius & Hollister, Cincinnati, Ohio, for plaintiff.

William R. Jacobs, Strauss & Troy, Covington, Ky., for defendant Corporex.

William R. Jacobs, Strauss & Troy, Covington, Ky., for defendant Terrae Tutela.

Larry Crigler, Burlington, Ky., for defendant Boone County.

Chris Gorman, Office of Atty. Gen., Frankfort, Ky., for defendant Com. of Ky.

## MEMORANDUM OPINION & ORDER

BERTELSMAN, Chief Judge.

In this diversity action, the mortgagee of commercial real estate seeks, among other things, foreclosure. The matter came before the court for hearing on the plaintiff's motion for partial summary judgment and order of sale. Robert A. Winter, Jr., L. Clifford Craig, and Michael J. Zavatsky appeared on behalf of Travelers Insurance Company [hereinafter Travelers]. Martin C. Butler and William R. Jacobs appeared on behalf of the defendants, Corporex Properties, Inc. [hereinafter Corporex], and Terrae Tutela Corporation [hereinafter Terrae].

For the reasons set forth at the hearing on this matter and for the additional reasons set forth below, IT IS ORDERED THAT PLAINTIFF'S MOTION BE GRANTED IN PART.

### A. Background

The material facts are undisputed. On September 12, 1985, Corporex and Travelers executed a Mortgage Note in the amount of $6,400,000 [hereinafter Note], and a Mortgage Deed and Surety Agreement [hereinafter Mortgage]. The Note contains an acceleration clause for failure to make payments of interest or principal when due. The Mortgage contains a similar acceleration clause in addition to the remedy of foreclosure for failure to make payments when due or for other breaches enumerated in the Mortgage. Transfer of any or part of the mortgaged property without prior written consent of Travelers would constitute a default under the Mortgage and Note. Mortgage ¶¶ 14, 18; Note at 2–3. Finally, both documents contain "no waiver" provisions: that is, failure of Travelers to exercise any of its rights does not constitute a waiver of any continuing or future default. Mortgage ¶ 20; Note at 5. The Note is a nonrecourse instrument.

Beginning October 1, 1990, Corporex failed to pay monthly installments of principal, interest and late charges when due. By late 1990, Corporex approached Travelers in an attempt to discuss a "workout." From January until July the parties attempted to negotiate a workout, without success, and Travelers filed this action on July 12, 1991.

### B. Plaintiff is Entitled to Foreclosure since Defendants' Estoppel/Waiver/Inequitable Conduct Argument is without Merit

Corporex contends that Travelers engaged in certain "inequitable conduct" that may defeat Travelers' right to demand foreclosure. Corporex also argues that Travelers breached a duty to act reasonably and in good faith.

Corporex's argument derives from the premise that Travelers was under an obligation to reach an agreement on the terms of a workout. Corporex, however, cites no authority supporting this premise. A statutory duty applied to farm loans is the only circumstance in which a court has found any mention of an obligation on the part of the mortgagee to attempt to restructure. *See, e.g., Farm Credit Bank of Spokane v. Debuf,* 757 F.Supp. 1106, 1109 (D.Mont.1990). The statute and regulation relevant to those cases do not apply here.

■ Although it is recognized that implied in each contract is a covenant of "good faith and fair dealing," such a covenant does not preclude a party from enforcing the terms of the contract. *See, e.g., K.M.C. Co. v. Irving Trust Co.,* 757 F.2d 752, 759 (6th Cir.1985); *Ranier v. Mount Sterling Nat'l Bank,* 812 S.W.2d 154, 156 (Ky.1991). It is not "inequitable" or a breach of good faith and fair dealing in a commercial setting for one party to act according to the express terms of a contract for which it bargained. *Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank,* 934 F.2d 976, 983 (8th Cir.1991); *Kham & Nates Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1357–58 (7th Cir.1990).

■ Corporex cites two lines of cases discussing waiver, estoppel and inequitable conduct. The first line of cases holds that a mortgagee who repeatedly accepts late and/or partial payments is not entitled to accelerate the loan based on those payments. *See, e.g., Karas v. Wasserman,* 91 A.D.2d 812, 458 N.Y.S.2d 280, 282 (1982). These cases are inapplicable because there is no evidence that Travelers accepted such payments prior to issuing the letter of default and acceleration in January, 1991.

The second line of cases holds that a mortgagee may be estopped from pursuing a foreclosure either because its conduct was such that the mortgagor could have reasonably assumed that the mortgagee would not foreclose or because the mortgagee orally agreed to give the mortgagor time to negotiate a voluntary sale. *E.g., Citibank, N.A. v. Nyland (CF8) Ltd.,* 878 F.2d 620, 623 (2d Cir.1989) (applying New York law); *First Texas Sav. Ass'n v. Comprop Inv. Properties, Ltd.,* 752 F.Supp. 1568, 1575 (M.D.Fla.1990) (applying Florida law).

Without considering the viability of these doctrines under Kentucky law, it is clear that neither line of authorities applies to this case. It is undisputed that a private sale in lieu of foreclosure was not contemplated by the parties. Corporex wanted a restructuring, or "workout," of the loan; Corporex agreed, in writing, that Travelers was not waiving any rights in attempting to negotiate a workout; and Travelers accepted Corporex's interest payments during this period upon the express condition that the payments did not cure the breach and were not a waiver of Travelers' rights.

For example, a letter dated January 10, 1991, from John Bond, Vice President and Account Manager of Travelers, to William Butler, President and CEO of Corporex and Terrae, provides:

"RE: Pre–Workout Agreement

\*      \*      \*      \*      \*      \*

When signed by each of us, this letter constitutes an agreement between you ("Borrower") and the undersigned lender ("Lender").

1. *Negotiations.* We have commenced negotiations concerning certain obligations ("Obligations") you have to us. Without liability for failing to do so, we each plan to discuss various courses of action which may be in our mutual interests. Either of us, in our sole and absolute discretion, may terminate these discussions at any time and for any reason; and, upon such termination of discussions, our respective obligations to one another shall be only as set forth in executed written agreements, if any, as described below.

2. *Description of Loan Documents and Borrower's Default.* Borrower's obligations are incorporated within the loan documents executed and closed September 12, 1985, and subsequently funded pursuant to such documents. You hereby acknowledge that you are in default of certain monetary obligation [sic] as set forth on Exhibit 'A'.

3. *Only Written Agreements and Amendments.* Our contemplated discussions may be lengthy and complex. While we may reach verbal agreement on one or more preliminary issues which we are trying to resolve, we have agreed that neither of us shall be bound by any agreement, verbal or written, on individual issues, and no rights or liabilities, either express or implied, shall arise on the part of the parties hereto, or any third party, until and unless (a) agree-

ment is reached on all issues, and (b) our agreement on all issues has been reduced to a written agreement, signed by each of us, and approved by Lender's appropriate authorities. No verbal agreement shall be considered binding on either party. Furthermore, in order to avoid any confusion or misunderstanding, each of us also agrees that this agreement may only be amended in writing.

4. *Approval Process.* We do not have the authority to bind Lender to any modification of or changes in the loan document structure. If we reach a verbal agreement on proposed modifications to the Loan Documents, then we will summarize into a legal document, which will provide the basis for our recommendation to the appropriate authorities of Lender for a loan modification. If our recommendation is approved, you will be notified in writing of such approval.

\* \* \* \* \* \*

6. *No Waivers.* No negotiations or other actions undertaken pursuant to this agreement shall constitute a waiver of any party's rights under the Loan Documents, except to the extent specifically stated in a written agreement complying with the provisions of paragraphs 3 and 4 of this agreement.

\* \* \* \* \* \*

If the foregoing accurately summarizes the terms of our binding agreement, please sign this letter in the space provided below...."

Butler Dep., Ex. 8. Butler signed the agreement on January 11, 1991.

Travelers' acceptance of partial interest payments was made expressly without a waiver of rights, and Corporex acknowledged the same. For example, in a letter to Butler dated January 17, 1991, Travelers' Regional Counsel acknowledged receipt of a payment of $54,400.97. The letter states in part:

"The loan remains in default, and interest continues to accrue on the total unpaid amount due under the note at the default rate of 15.75% per annum.

This letter is to formally acknowledge receipt of this partial payment under the note and to notify you that, consistent with the Mortgage and other documents ..., Travelers' acceptance of this partial payment does not constitute and shall not be construed as a waiver of any of Travelers' rights and remedies as set forth in the loan documentation, or as otherwise provided by law."

Butler Dep., Ex. 9.

On June 10, 1991, after negotiations had proven unsuccessful, Travelers sent a letter to Butler, which provides in part:

"Our last substantive discussion on this matter occurred on May 8, 1991. To date, no agreement has been reached by the parties with respect to any such modification. After carefully considering Borrower's most recent proposal, Travelers hereby advises you that that proposal is not satisfactory.

During the course of the discussions, the Borrower made several payments on the amounts which were past due under the Note. Travelers accepted those payments after notifying the Borrower that such acceptance did not waive the defaults in payment by Borrower or the rights of Travelers to exercise any of its rights and remedies. Notwithstanding those payments and the January 8, 1991 notice, the Loan remains in default. The Loan indebtedness, which was accelerated and became immediately due and payable on or about January 21, 1991, remains past due and payable on this date. Interest continues to accrue on the total unpaid amount due under the Note at the rate stipulated in the event of default.

As stated above, the Loan indebtedness was accelerated and became immediately due and payable.... Notice is hereby given that unless the outstanding principal balance of the Note, together with all accrued and unpaid interest, late charges and other sums due and owing in connection therewith, are paid in full within ten (10) days of the date hereof, Travelers will thereafter immediately proceed to exercise its rights and remedies under the Loan Documents and as otherwise provided by applicable law."

Butler Dep., Ex. 11.

Counsel became involved again at this juncture. Another effort was made to

avoid foreclosure. On June 21, 1991, counsel for Corporex wrote counsel for Travelers advising:

> "This afternoon I spoke with Mike Watson of Travelers and we agreed that I would hand deliver to you today the enclosed check from Corporex ... in the amount of $165,000.00 to apply in the above captioned loan. Corporex fully understands that this check does not satisfy their entire default and that Travelers reserves all rights under the Loan and Mortgage documents.
>
> \*    \*    \*    \*    \*    \*
>
> This will also confirm our arrangements to meet on this transaction and hopefully resolve all differences. The meeting is to occur ... Monday, July 8...."

Butler Dep., Ex. 12.

The meeting took place on July 8th. The parties discussed new terms of a workout, and Travelers asked Corporex to execute a letter reaffirming that the January 10, 1991, pre-workout agreement would apply to any subsequent talks. Butler executed the document on July 10th.

In light of the express written acknowledgements by both parties of "no waiver," Corporex's arguments for estoppel/waiver are insufficient to create an issue of fact precluding summary judgment. *See, e.g., Security Pac. Mortgage and Real Estate Serv., Inc. v. Canadian Land Co. of North America,* 690 F.Supp. 1214, 1218–19 (S.D.N.Y.1988), *aff'd,* 891 F.2d 447 (2d Cir. 1989); 55 Am.Jur.2d *Mortgages* §§ 388, 391 (1971).

### C. Plaintiff's Motion for Rescission is Granted

■ In addition to attending the final meeting on July 8, 1991, it is undisputed that on that date Corporex transferred the property to Terrae. Corporex did not inform Travelers of the transfer prior to doing so, and Butler knew that the transfer was in breach of the Mortgage. Butler hoped the transfer would avoid negative publicity for Corporex or put Corporex "in a better position to negotiate on an even basis" if negotiations fell through and fore-

closure proceedings were instituted. The transfer deed was recorded on July 9th. Butler informed Travelers of the transfer on July 10th or 11th. This suit was filed on July 12th. *See* Butler Dep. at 88–105 & Exs. 13, 14A, 14B, 15.

This court previously noted that the transfer was in violation of the documents and conditioned the appointment of Butler as receiver on reconveyance of the property. Tr. Hr'g Sept. 12, 1992, at 6–8. Corporex did not reconvey. Corporex's only argument supporting its action is that the property is not "impaired" in any way by the transfer. It is undisputed that Corporex transferred the property to Terrae without notice to Travelers in violation of the Mortgage and Note. In his deposition, Butler admits that he knew the transfer was wrongful when he did it. Therefore, the court finds that Travelers is entitled to rescission of the transfer.

### D. All Categories of Charges Due under the Note are Recoverable as a Matter of Law

The parties executed a third document, an Assignment, which entitled Travelers to a receiver and rents upon default. This Assignment is a separate contract given as further security for the Note. Travelers' claim under the Assignment is not part of this motion for summary judgment. Corporex does not dispute Travelers' calculations of the amounts due under the formulae of the Note. Rather, Corporex argues that certain categories of charges are not recoverable as "penalties."

The court finds that all categories of charges due under the Note are recoverable as a matter of law. Calculation of the amount due for each category is referred to special masters as provided below.

#### (1) *Late Charges*

■ Corporex argues that the late fees claimed under the Note constitute a "penalty" and are, therefore, not recoverable. The amount for late fees claimed is $18,-632.39, which is a 4% charge based on the unpaid amounts accruing from October,

1990, to January 21, 1991, the date of acceleration.

■ Late charges specified in a contract are recoverable as liquidated damages because of the difficulty and impracticability of fixing the amount of actual damages for administrative expenses that will be sustained in the event of late payments. *See, e.g., Crest Sav. & Loan Ass'n v. Mason,* 243 N.J.Super. 646, 581 A.2d 120, 121 (Ch. Div.1990); *Garrett v. Coast & S. Fed. Sav. & Loan Ass'n,* 9 Cal.3d 731, 108 Cal.Rptr. 845, 890, 511 P.2d 1197, 1202 (1973).

■ Generally, a court is not free to disregard a contract provision for liquidated damages. It can do so only if, from the language of the contract, the damages at issue are actually ascertainable.

"[I]f, independently of the stipulated damages, the damages would be uncertain, and impracticable to be ascertained, except by conjecture, in such cases the damages will be considered liquidated; **or, if the language of the parties evinces a clear and undoubted intention to fix the sum mentioned as liquidated damages in the case of default of performance of some act agreed to be done, then the courts will enforce the contract....** 'That damages may be liquidated in advance of the breach of contract as a compensation to the party who is to suffer in the event of a default, is well settled, and a court of equity has no power to change the contract regulating the damages or the amount of recovery in order to grant relief.' "

*Kilbourne v. Burt & Brabb Lumber Co.,* 111 Ky. 693, 64 S.W. 631, 632 (1901) (emphasis added) (citation omitted); *see also* 22 Am.Jur.2d *Damages* § 686 (1988) ("The parties to a contract have the right to agree to liquidated damages clauses, provided they are neither unconscionable nor contrary to public policy.... The parties are bound by a stipulation for liquidated damages. The amount is fixed and is not subject to change; however, if the stipulated sum is deemed to be a penalty, it is not enforceable, and no sum can be recovered or allowed other than that which will compensate for the actual loss sustained and proved.... Ordinarily, even a court of equity will not relieve against a stipulation for liquidated damages.").

The court finds that a 4% late fee is not unreasonable in commercial transactions. Apparently, late charges are routinely allowed in mortgage foreclosures, and Corporex has not cited any Kentucky decision involving a mortgage where late fees were disallowed as a "penalty." Accordingly, the court finds that this argument is without merit.

### (2) *Interest at the Default Rate*

■ The Note calls for a 15.75% interest rate in the event of default and acceleration, as compared to the 11% normally charged under the terms of the Note. The accelerated interest rate applies until the date of judgment.

A recent Kentucky Supreme Court decision upholds an award of "interest at the contract rate" of 15.5% from acceleration until judgment in accordance with Ky.Rev. Stat.Ann. § 360.040, which provides that "[a] judgment may be for the principal and accrued interest; but if rendered for accruing interest on a written obligation, it shall bear interest in accordance with the instrument reporting such accruals, whether higher or lower than twelve percent (12%)." *Capitol Cadillac Olds, Inc. v. Roberts,* 813 S.W.2d 287, 292 (Ky.1991). Again, Corporex has not cited any Kentucky authority holding that a 15.75% interest rate on an accelerated mortgage is a "penalty" and unenforceable. Accordingly, the court finds that this argument is without merit.

### (3) *Prepayment Premium*

■ The Note contains a prepayment premium whereby, in the event of default and acceleration, Travelers is "entitled to a prepayment premium upon the indebtedness so accelerated computed as if a voluntary prepayment had been made on the date of such acceleration." The reason for the premium is to insure the lender against the loss of its bargain if the interest rates decline. Such contract provisions are enforceable. *E.g., Parker Plaza W. Part-*

ners v. UNUM Pension & Ins. Co., 941 F.2d 349, 355–56 (5th Cir.1991) (Texas law); *cf. Mutual Life Ins. Co. of New York v. Hilander,* 403 S.W.2d 260 (Ky.1966). Therefore, the court finds that this argument is without merit.

Accordingly, the court being advised, IT IS ORDERED AS FOLLOWS:

1. That Travelers is entitled to foreclosure under the Note and Mortgage;

2. That Travelers is entitled to recover late charges, interest at the default rate, and prepayment premiums under the terms of the Note;

3. That Travelers is entitled to rescission of the transfer of the property to Terrae;

4. That Terrae reconvey the property to Corporex FORTHWITH;

5. That Norbert J. Bischoff, 20 North Grand Avenue, Ft. Thomas, KY 41075, (606) 781–4700, and Martin Roy Kirchhoff, of Kirchhoff, McMurray & Kreutzer, 31 E. 4th Street, Newport, KY 41071, (606) 491–4300, be, and they are, hereby appointed as special masters pursuant to Fed.R.Civ.P. 53 to perform the functions that would be performed by the Master Commissioner if this action had been filed in state court. The court finds that exceptional circumstances exist by reason of the judicial emergency now prevailing in this district, and the exceptionally complicated nature of this case, and the fact that the court has no official comparable to the Master Commissioner in the state court system to perform these functions; and

6. That the special masters shall calculate the balance due under the Note, appraise the property, marshal all liens (including the issue of priority of Travelers' loans for improvements under new leases executed by the receiver), and make their report to the court of the same. Furthermore, the special masters shall arrange and supervise the sale of the property upon further orders of this court.