CARTER'S COURT ASSOCIATES, David E. Mills and Richard R. Standel, Jr., Plaintiffs/Counter–Defendants/Third–Party Plaintiffs,

v.

METROPOLITAN FEDERAL SAVINGS AND LOAN ASSOCIATION, a/k/a Metropolitan Federal Bank, Eddie W. Redmon, Resolution Trust Corporation and Metropolitan Federal Savings and Loan Association, F.A., Defendants/Counter–Plaintiffs.

No. 3:91–0658.

United States District Court, M.D. Tennessee, Nashville Division.

Jan. 27, 1994.

M. Clark Spoden, Nashville, TN, for plaintiffs.

William E. Long, Memphis, TN, for defendants.

## *MEMORANDUM*

JOHN T. NIXON, Chief Judge.

Plaintiffs Carter's Court Associates ("Carter's Court"), David E. Mills ("Mills")[1], and Richard R. Standel, Jr. ("Standel") brought this action against Metropolitan Federal Savings and Loan Association, the predecessor in interest of the defendants, on November 15, 1990. The action arises out of a loan in the total principal amount of $1,525,000 (the "Loan") to Carter's Court, a general partnership. Standel and Mills, and their former partners, Eddie W. Redmon ("Redmon")[2] and James Larry Williams ("Williams"), all guaranteed the Loan by individual personal suretyship agreements.

Plaintiffs' suit against defendants RTC in its capacity as Receiver for Old Met Fed and RTC in its capacity as Receiver for New Met Fed[3] alleges negligence, tortious interference with business relations, conspiracy, and breach of the duty of good faith and fair dealing. Plaintiffs allege that Old Met Fed improperly worked out separate loans with Redmon and Williams to their detriment. Further, plaintiffs assert that Old Met Fed failed to negotiate in good faith with Carter's

---

**1.** Mills is in the midst of bankruptcy proceedings. The Trustee for Mills made no appearance at the trial and the claims of Mills as plaintiff are dismissed without prejudice. The Resolution Trust Corporation ("RTC") as Receiver for Metropolitan Federal Bank, F.S.B., f/k/a Metropolitan Federal Savings and Loan Association ("Old Met Fed") and the RTC as Receiver for Metropolitan Federal Savings and Loan Association, F.A. ("New Met Fed") voluntarily dismissed its claims against Mills.

**2.** Because plaintiffs offered no proof in support of their claims against Redmon and because these claims were not included in the Final Pretrial Order (which supplants the pleadings), the Court dismisses plaintiffs' causes of action against Redmon.

**3.** On April 19, 1991, certain assets of Old Met Fed, including the Loan, were transferred to a newly chartered federal association, Metropolitan Federal Savings and Loan Association, F.A. ("New Met Fed"). Effective March 27, 1992, RTC was made the Receiver for New Met Fed. Certain liabilities of Old Met Fed, including whatever liability Old Met Fed had for the acts alleged by plaintiffs in this suit, were retained by the RTC as Receiver for Old Met Fed and were not transferred to, or assumed by, New Met Fed.

Court to restructure the Loan and that Old Met Fed's misrepresentations and delays damaged the business position of Carter's Court and the ability of Carter's Court to repay the Loan.

The RTC in its capacity as Receiver for Old Met Fed and the RTC as Receiver for New Met Fed counter-sued plaintiffs for recovery under the Loan to New Met Fed and the partial personal guaranty of the Loan of Standel in the amount of $321,868.85.

The case was tried before the Court without a jury on November 16, 1993. Based upon the evidence presented at trial and the complete record in the case, the Court makes the following findings of fact and conclusions of law. With respect to the plaintiff's claims and the defendants' counter-claims, the Court rules in favor of the defendants. As to the defendants' request for an award of pre-judgment interest, the Court rules in favor of the plaintiffs.

## FINDINGS OF FACT

Carter's Court was a Tennessee general partnership conducting business in Williamson County, Tennessee. In May 1989, the partners of Carter's Court were Williams, Redmon, Standel, and Mills. Standel became a general partner of Carter's Court on May 1, 1986.

On December 16, 1985, Carter's Court borrowed $1.2 million from Old Met Fed pursuant to two promissory notes Carter's Court executed in favor of Old Met Fed in the amounts of $300,000 and $900,000. The loans were obtained for the purpose of financing the acquisition and renovation of certain commercial real property located in Williamson County, Tennessee known as Carter's Court. Contemporaneously with the execution of the notes, Carter's Court executed a Loan Agreement, a Deed of Trust, Assignment of Rents and Security Agreement, and a Collateral Assignment of Rents and Leases. The two notes each had a stated maturity date of December 31, 1989.

On or about August 8, 1986, Old Met Fed and Carter's Court entered into a First Amendment to Loan Agreement, Promissory Notes, Deed of Trust, Assignment of Rents and Security Agreement, and Collateral Assignments of Rents and Leases (collectively, the "First Amendment"). At this time, Carter's Court executed a third promissory note in the amount of $325,000. Contemporaneously with the execution of the First Amendment and the $325,000 note, Standel executed a suretyship agreement in favor of Old Met Fed whereby Standel guaranteed the payment to Old Met Fed of all indebtedness of Carter's Court to Old Met Fed up to the amount of $612,500.

Old Met Fed and Carter's Court entered into a Second Amendment to Loan Agreement, Deed of Trust, Assignment of Rents and Security Agreement and Collateral Assignment of Rents and Leases (collectively, the "Second Amendment") on February 11, 1987 providing for, *inter alia* the consolidation of the three promissory notes into one note for $1,525,000. Contemporaneously with the execution of the Second Amendment and the $1,525,000 Note, Standel executed another suretyship agreement in the amount of $381,250 (the "Second Standel Suretyship Agreement").

On February 23, 1989, Carter's Court executed a promissory note to Old Met Fed having a stated maturity date of February 23, 1990 in the amount of $1,499,001.72 evidencing renewal of the $1,525,000 note. In June of 1989, the Carter's Court loan went into default.

Once the Carter's Court loan went into default, Old Met Fed had the right under the Loan Agreement, the Deed of Trust, the Second Amendment and Standel's Suretyship Agreements to accelerate and collect the Carter's Court debt, and to foreclose on the Deed of Trust.

In May 1989, the partners of Carter's Court informed Old Met Fed of the need for a debt restructuring prior to default. Negotiations between Carter's Court and Old Met Fed continued over the next eleven months. On August 16, 1989, Carter's Court submitted a Loan restructuring proposal to Met Fed. Met Fed promised a response by August 31, 1989. Met Fed did not respond until October 3, 1989.

Met Fed negotiated with Redmon and Williams to lend them monies to make their *pro rata* contributions to Carter's Court so as to enable Carter's Court to service the Loan as it was currently structured rather than restructure it. On August 3, 1989, the Senior Credit Committee of Old Met Fed approved a loan to Redmon in the amount of $420,000. On the same day, the Senior Credit Committee of Old Met Fed approved a loan to Williams in the amount of $533,000. As collateral Old Met Fed took forty-four shares of common stock in Industrial Plating Company, Inc. reported to be worth $2,200,-000. Carter's Court and Standel were unaware of Met Fed's negotiations with Redmon and Williams.

The RTC as Receiver for New Met Fed was the owner and holder of a security interest in twenty-two shares of common stock in Industrial Plating Company, Inc. as evidenced by an Assignment, Pledge and Security Agreement dated September 8, 1989, and as perfected by possession of the stock and by the recording of a UCC–1 financing statement in the Office of the Tennessee Secretary of State. However, the stock has been sold and is no longer in the possession of Redmon or the RTC as Receiver for New Met Fed.

Standel delivered to Old Met Fed a notice of attempted discontinuance of his suretyship obligation on September 29, 1989.

On or about April 19, 1990, Old Met Fed and Carter's Court entered into a Third Amendment to Loan Amendment [sic] and First Amendment to Promissory Note and Third Amendment to Deed of Trust, Assignment of Rents and Leases (collectively, the "Third Amendment"). The Third Amendment required a $75,000 payment to Old Met Fed by Carter's Court and an extension of the maturity date of the loan to November 1, 1990 with no payments of principal or interest due before that date. Pursuant to the Third Amendment Standel made a cash payment to Old Met Fed thus reducing his liability under the Second Standel Suretyship Agreement from $381,250 to $321,868.85.

April 19, 1990 was the approximate expiration date of the preference period on Williams' and Redmon's pledged Industrial Plating Company stock.

The Carter's Court property, a shopping center in Franklin, Williamson County, Tennessee, was appraised at $1.6 million in March 1987. At that time the property had only one tenant. A May 1988 appraisal valued the property at $2,350,000, when the occupancy at the Carter's Court property was at its peak (70%). Even at its peak level of occupancy the income from the property was not sufficient to service the existing Old Met Fed debt. From April 1989 through the end of 1990, tenant occupancy continued to decrease. The RTC as Receiver for New Met Fed foreclosed on its Deed of Trust encumbering the Carter's Court property on December 11, 1992. The RTC as Receiver for New Met Fed was the successful bidder on the property and bid in the property for the sum of $389,968.

The Carter's Court debt remains in default, with a principal balance of $1,427,-595.86, plus accrued interest of $309,084.28 as of January 18, 1994. As a result of the default of the Carter's Court debt, Standel's debt under his Suretyship Agreement, as modified by the Third Amendment, remains in default in the principal amount of $321,-868.85.

## CONCLUSIONS OF LAW

### A. Tortious Interference with Business Relations

■ The elements of tortious interference with another's business are: (i) intentional interference; (ii) harm or damage as a result of the interference; (iii) malice, ill will or wrong motive in the interference; and (iv) interference without justification or excuse. *Lann v. Third National Bank*, 198 Tenn. 70, 277 S.W.2d 439, 440 (1955). Plaintiffs have failed to make a showing of these four elements.

■ In *Melamed v. Lake Country Nat'l Bank*, 727 F.2d 1399, 1403–04 (6th Cir.1984), the court found that evidence of a bank providing a memorandum outlining a "13–point strategy" was sufficient to send to a jury a claim of tortious interference with business relations. In the instant case, no such inten-

tional interference is present. *Sanders v. First Nat'l Bank in Great Bend,* 114 B.R. 507, 517–18 (M.D.Tenn.1990) *aff'd,* 936 F.2d 273 (6th Cir.1991). Nor is there any proof of malice, ill will or wrong motive on the part of Old Met Fed. Old Met Fed actions were not unjustifiable. Old Met Fed did nothing inconsistent with, or violative of, the terms and conditions of the Carter's Court loan documents.

Plaintiffs' claim rests on the argument that Old Met Fed's delay of the restructuring of the Loan was for an unjustified purpose and such action constituted tortious interference with the business of Carter's Court. Plaintiffs allege that Old Met Fed, in approaching Williams and Redmon with an alternative plan to that produced by Carter's Court, improperly interfered with the contractual and fiduciary duties that Williams and Redmon owed to Standel and Mills.

Plaintiffs would have this Court make defendants liable for pursuing a legitimate business purpose—the repayment of debt owed to them by Carter's Court and Standel. The Court is unpersuaded by plaintiffs' argument. The Court rules that the RTC as Receiver for Old Met Fed is not liable to Carter's Court or Standel for tortious interference with business relations.

### B. Negligence

■ To prove a cause of action for negligence, plaintiffs must establish the following three elements: (i) a duty of care owed by the defendant to the plaintiff; (ii) a breach of that duty; and (iii) a causal relation between the injury to the plaintiff and the defendant's breach of his duty of care. The Court finds that plaintiffs have failed to prove their claim for negligence.

Carter's Court and Standel claim that Old Met Fed breached its duty of due care when it failed to process the loan restructuring promptly. Plaintiffs argue that once Old Met Fed began to discuss a possible restructuring of the Loan, Old Met Fed owed plaintiffs a duty to act with due care.

As to the first element, Old Met Fed owed no duty to plaintiffs under the loan documents or under Tennessee law to negotiate a loan workout or to refrain from negotiating

individually with the partners of Carter's court. There is no such duty under the law. *See, e.g., Travelers Ins. Co. v. Corporex Properties,* 798 F.Supp. 423, 425 (E.D.Ky. 1992).

■ Even assuming that Old Met Fed owed a duty of care to the plaintiffs and that duty was breached, plaintiffs have failed·to prove a causal relationship between their alleged injury and Old Met Fed's claimed breach of its duty of care. Negligence is actionable when it is the proximate cause of the plaintiff's injury, i.e., "[t]he omission must be such that had it not happened the injury would not have been inflicted." *Shouse v. Otis,* 224 Tenn. 1, 448 S.W.2d 673, 676 (1969). The proof at trial did not establish beyond a preponderance of the evidence that the delay in negotiating the restructuring of the Loan caused the occupancy levels at Carter's Court to decline.

### C. Civil Conspiracy

■ In order for there to be a civil conspiracy under Tennessee law, there must be a single plan, with the alleged co-conspirators sharing in a general conspiratorial objective, and an overt act committed in furtherance of the conspiracy which caused injury to the complainant. *U.S. v. Murphy,* 937 F.2d 1032, 1039 (6th Cir.1991), citing *Hooks v. Hooks,* 771 F.2d 935, 943–44 (6th Cir.1985). A civil conspiracy is "a combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Dale v. Thomas H. Temple Co.,* 186 Tenn. 69, 208 S.W.2d 344, 353 (1948).

■ Plaintiffs allege that Old Met Fed, Williams, and Redmon conspired in arranging a surreptitious agreement whereby Williams and Redmon individually obtained financing for their *pro rata* capital contributions to Carter's Court at the same time that Williams and Redmon knew that Carter's Court was negotiating through Mills to restructure the Loan. Plaintiffs argue that since Williams and Redmon knew that Mills would not be able to make any capital contribution as envisaged by Old Met Fed's proposal, Williams'·and Redmon's dealings with

Met Fed unduly delayed the efforts of Carter's Court to enter into a feasible restructuring of the Loan.

Old Met Fed approved loans to Williams and Redmon and also took a security interest in the shares of Industrial Plating Company, Inc. belonging to Redmon. These acts are neither tortious nor unlawful. Further, there is no evidence in the record indicating that approval of the loans or the taking of the security interest in Redmon's stock was accomplished by unlawful means. Plaintiffs would have this Court infer a "conspiratorial objective" and "tortious purpose" from evidence excluded at trial. The Court declines to do so. The RTC as Receiver for Old Met Fed is not liable to Carter's Court or Standel for civil conspiracy.

D. Duty of Good Faith and Fair Dealing

■ Plaintiffs rely on Tennessee Code Annotated Section 47–1–203 to assert a breach of the duty of good faith and fair dealing. Tennessee Code Annotated Section 47–1–203 provides as follows:

> Every contract or duty within chapters 1–9 of this title imposes an obligation of good faith in its performance or enforcement.

"Good faith" means honesty in fact and compliance with reasonable standards of fair dealing in the trade. Tenn.Code Ann. § 47–2–103(1)(b) (1988). Plaintiff's reliance on Section 47–1–203 is misplaced as this provision does not create an independent tort for breach of covenant of good faith and fair dealing. "The duty of good faith created by § 47–1–203 goes to the performance or enforcement of the contract, not to its execution." *Walker v. First State Bank*, 849 S.W.2d 337, 343 (Tenn.Ct.App.1992) (citations omitted).

■ Plaintiffs do not assert a cause of action based on the loan documents. Plaintiffs' claim rests upon alleged oral agreements between plaintiffs and Old Met Fed to negotiate a workout. Carter's Court and Standel allege that Old Met Fed had no initial duty to enter into loan restructuring negotiations with Carter's Court; however, once Old Met Fed began negotiating, Old Met Fed owed plaintiffs a duty of good faith and fair dealing. Fair dealing during the negotiations required Old Met Fed to act on a reasonably timely basis and avoid intentional delays.

■ Plaintiff's argument is unsupported by law. When the Loan went into default in June 1989, Old Met Fed was not under a duty to restructure the Loan under the express terms of the loan documents or under any implied terms. In the absence of an express contract term, there is no duty on the part of a lender to negotiate a workout or provide increased credit. *Savers Federal Savings & Loan v. Home Federal Savings & Loan*, 721 F.Supp. 940, 946 (W.D.Tenn.1989), *Fasolino Foods v. Banca Nazionale Del Lavoro*, 961 F.2d 1052, 1057 (2d Cir.1992). Further, there is no breach of good faith for a party to act consistently with the terms of a written agreement. *Travelers Ins. Co. v. Corporex Properties*, 798 F.Supp. 423, 425 (E.D.Ky.1992). The RTC as Receiver for Old Met Fed is not liable to Carter's Court or Standel for a breach of the duty of good faith and fair dealing.

E. Prejudgment Interest

■ The RTC as Receiver for New Met Fed seeks prejudgment interest against Standel on his suretyship obligation. Tennessee Code Annotated Section 47–14–123 provides for the award of prejudgment interest as an element of damages. The award of prejudgment interest may be made in accordance with the principles of equity, *Agristor Leasing v. A.O. Smith Harvstore Products, Inc.*, 869 F.2d 264, 269 (6th Cir.1989), *Schoen v. J.C. Bradford & Co.*, 667 S.W.2d 97, 101–02 (Tenn.Ct.App.1984), and is a matter of the discretion of the trial court. *B.F. Myers & Son of Goodlettsville, Inc. v. Evans*, 612 S.W.2d 912, 916 (Tenn.Ct.App.1980). Prejudgment interest on the suretyship obligation shall not be awarded because this Court finds that Standel was warranted in opposing the suit of the RTC as Receiver for Old Met Fed.

CONCLUSION

Plaintiffs Carter's Court and Standel are required to repay the Loan as originally promised pursuant to the Promissory Notes and Suretyship Agreements. Carter's Court

is liable to the RTC as Receiver for New Met Fed under the $1,499,001.72 Note, as amended by the Third Amendment in the principal amount of $1,427,595.86, plus accrued interest. Standel is liable to the RTC as Receiver for New Met Fed under his Suretyship Agreements, as amended by the Third Amendment, in the principal amount of $321,868.85. Standel is not liable to the RTC as Receiver for New Met Fed for prejudgment interest.

An Order consistent with the reasoning set forth above is filed contemporaneously.

### ORDER

In accordance with the contemporaneously filed Memorandum, with respect to the plaintiff's claims and the defendants' counterclaims, the Court RULES in favor of the defendants. As to the defendants' request for an award of prejudgment interest, the Court RULES in favor of the plaintiffs.

Plaintiffs Carter's Court and Standel are ORDERED to repay the Loan as originally promised pursuant to the Promissory Notes and Suretyship Agreements. Carter's Court is liable to the RTC as Receiver for New Met Fed under the $1,499,001.72 Note, as amended by the Third Amendment in the principal amount of $1,427,595.86, plus accrued interest of $309,084.28 as of January 18, 1994.

Standel is liable to the RTC as Receiver for New Met Fed under his Suretyship Agreements, as amended by the Third Amendment, in the principal amount of $321,868.85. Standel is not liable to the RTC as Receiver for New Met Fed for prejudgment interest.