967 F.2d 583
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re Moses N. ASLAN, Debtor.
The HONGKONG AND SHANGHAI BANKING CORPORATION; Central
Bank, Plaintiffs-Appellees,
v.
Moses N. ASLAN, Defendant-Appellant.
The HONGKONG AND SHANGHAI BANKING CORPORATION; Central
Bank, Plaintiffs-Appellants,
v.
Moses N. ASLAN, Defendant-Appellee.
 Nos. 89-55629, 89-55702.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 12, 1990.
Decided May 29, 1992.
 
 Before REINHARDT, CYNTHIA HOLCOMB, HALL, and RYMER,* Circuit Judges.
 ORDER
 The memorandum disposition filed March 25, 1991, is hereby withdrawn.
 MEMORANDUM**
 Moses N. Aslan appeals, and the Hongkong and Shanghai Banking Corporation and Central Bank ("the Banks") cross-appeal, from a decision of the district court which affirmed a decision of the bankruptcy court that sustained in part, and overruled in part, Aslan's objections to an amended proof of claim filed by the Banks. We affirm.
 * Stipulated judgments and consent decrees may be given collateral estoppel effect. See California State Auto. Ass'n Inter-Ins. Bureau v. Superior Court, 788 P.2d 1156, 1159 (Cal.1990). A final judgment or order of a court cannot be reviewed or disrupted by another court in a separate, collateral proceeding unless the judgment was induced by a party's fraudulent conduct, see Atlantic Richfield Co. v. Superior Court, 124 Cal.Rptr. 63, 66 (Cal.App.1975), the issuing court lacked jurisdiction, or the judgment is invalid on its face. See Gonzales v. State, 137 Cal.Rptr. 681, 687 (Cal.App.1977).
 None of these exceptions apply to this case. Aslan has neither challenged the jurisdiction of the state court that approved the stipulated judgment nor alleged that the judgment was induced by fraudulent statements or conduct. Aslan argues that the $8.3 million debt he owes to the Banks contains a $2 million late payment penalty that is unenforceable under California contract law. To the extent the judgment is defective on that score, it is not apparent on the face of the judgment; therefore, it cannot be a ground of collateral attack. The argument now raised by Aslan should have been raised in the state court prior to consenting to the stipulated judgment.
 To determine whether the judgment imposes an impermissible penalty under California law, we would need to analyze all of the references in the judgment and review other evidence to determine whether the parties made the type of fair approximation of anticipated damages called for in Garrett v. Coast & Southern Fed. Sav. & Loan Ass'n, 511 P.2d 1197 (Cal.1973). Such an inquiry by a federal court at this juncture would entail a far more involved inquiry into the validity of the stipulated judgment than is permitted by principles of res judicata and collateral estoppel.
 The exception to collateral estoppel set out in Brown v. Felsen, 442 U.S. 127 (1979), that applies when a bankruptcy court must decide whether a judgment debt ordered by a state court is dischargeable in bankruptcy is not applicable to the case at hand. Here, the question is whether the $8.3 million debt imposed by the judgment is valid--not whether the debt can be discharged in bankruptcy.
 Nor does In re Comer, 723 F.2d 737, 740 (9th Cir.1984), which held that a bankruptcy court may look behind a state court judgment and entertain evidence extrinsic to the state court record if the evidence pertains to the nature of the debt sought to be discharged, permit the bankruptcy court to look behind the judgment in this case. In Comer, we concluded that Brown does not allow debtors to challenge the amount of their debts in bankruptcy proceedings, and we denied the debtor an opportunity to challenge the extent of his alimony and child support obligations. Id. Aslan is similarly asking the court to determine how much he owes the Banks under the terms of the stipulated judgment (whether he owes $6.3 million under paragraph 7 of the judgment or $8.3 million under paragraph 1). Bankruptcy courts may only look at the nature of debts to determine whether they are dischargeable, not the amount of the debt. Id.
 Even if what Aslan seeks may be characterized as an inquiry into the nature of his debt to the Banks--whether the $8.3 million debt is partly an impermissible penalty--this case would still not fall within the scope of Comer. The Comer exception to collateral estoppel only allows debtors to challenge the nature of a debt in bankruptcy if dischargeability of the debt is in issue. The issue in this case focuses on the validity of the Banks' $8.3 million claim, not its dischargeability. This type of challenge can be properly raised only on direct appeal in the state courts and is, therefore, barred in the bankruptcy court. The district court correctly refused to look behind the judgment.
 II
 The Banks contend that the letter agreement either expressly or impliedly conditioned the application of the Rowan Proceeds to the stipulated judgment amount on Aslan's forebearance from attacking the judgment and his payment of all sums due thereunder. In support of this contention, the Banks state that Aslan expressly ratified, approved and affirmed the judgment and, therefore, Aslan agreed not to attack the judgment. Since Aslan has attacked the judgment, the Banks assert, he has breached the Letter Agreement and the Banks need not perform.
 As support for their assertion that the Letter Agreement contains an implied covenant not to sue or not to attack the judgment, the Banks cite College Block v. Atlantic Richfield Co., 254 Cal.Rptr. 179 (Cal.App.1988), and Northridge Hosp. Found. v. Pic 'N' Save No. 9, 232 Cal.Rptr. 329 (Cal.App.1986). Although the cases cited stand for the propositions stated, they involve leases, and do not support the Banks' assertion that the Letter Agreement and the stipulated judgment contain implied covenants not to sue or not to attack the judgment.
 In College Block, the California Court of Appeal found an implied covenant of continued operation of a gas station in the lease. The lease did not set a fixed rent, but rather fixed a minimum amount plus a percentage based on the amount of gas delivered. See College Block, 254 Cal.Rptr. at 182. Reading the agreement as a whole, the court found that "[a] covenant of continued operation can be implied into commercial leases containing percentage rental provisions in order for the lessor to receive that for which the lessor has bargained." Id. at 182. Consequently, the court concluded that an implied covenant was necessary to effectuate the intent of the parties, and that "it [was] so obvious that the parties had no reason to state the covenant." Id.
 Here, however, the Banks have presented no evidence that indicates that the parties intended to include a covenant not to sue or not to attack the judgment, nor have the Banks presented evidence that indicates that an implied covenant not to sue or not to attack the judgment is so obvious that it need not be stated or set forth.
 In Northridge, the question presented was whether a lessee's failure to renew the master lease "would so injure the rights of the sublessee [that] there [must] be an implied contract that the sublessor will [do so]." 232 Cal.Rptr. at 337. The court found an implied contract because the sublease contained "an absolute option to renew." Id. at 335. In the present case, there is no underlying agreement from which a covenant can be implied. Although Northridge discusses the duty of one party to an agreement not to injure the rights of the other party to the agreement, the question arose in a different context. The rights that were threatened in Northridge arose out of an express clause of the agreement between the lessee and the sublessee and were not implied. In the present case, the rights that the Banks claim are being threatened, namely freedom from having a court interpret a contract, are not expressly stated in the agreements.
 The Banks cite no cases, and we have discovered none, that hold that a contract contains an implied covenant not to sue or not to attack the contract. Furthermore, cases that recognize an express covenant not to attack or sue also recognize that some lawsuits are allowed, as long as they are brought in good faith and not to frustrate the purpose of the agreement. In Winchester Drive-In Theatre, Inc. v. Warner Bros. Pictures Dist. Corp., 358 F.2d 432 (2d Cir.1966), the court concluded that even if an implied covenant not to attack or sue could be held to exist, such a covenant would bar only suits that sought to attack the merits of the original suit. "It cannot be held to apply to the separate issue of settlement of that suit." Id. at 436.
 In this case, for the court to imply a covenant not to sue or not to attack the judgment would be to add a term that was neither originally intended nor expected by the parties. We have noted that "courts are loathe to impose limitations or restrictions upon the parties which are not expressly contained in their agreement or which do not arise by necessary implication." Republic Pictures Corp. v. Rogers, 213 F.2d 662, 665 (9th Cir.1954). Hence, under those circumstances, we have concluded that we will not imply a covenant not to sue or not to attack the judgment.
 The Banks also contend that Aslan has breached the agreement because he has failed fully to perform his obligations, and, therefore the Banks need not credit the Rowan Proceeds against the judgment. As previously noted, the Banks have been paid the full amount of the judgment, including interest, less the credit of the Rowan Proceeds. Therefore, the Banks' alternative contention that Aslan has breached the agreement by failing to perform is without merit. Hence, the district court was correct in ruling that Aslan did not breach the Letter Agreement, and that he is entitled to a credit of the Rowan Proceeds.
 AFFIRMED.
 REINHARDT, J., dissents from Part I.
 
 
 
 *
 The Honorable Pamela Ann Rymer was drawn by lot on August 27, 1991, to replace the Honorable Edward D. Re, former Chief Judge of the United States Court of International Trade, who formerly sat by designation on this panel. Judge Re retired while the petitions for rehearing were pending
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3