Opinion
LEE, P. J.
Proceedings Below
On December 9, 2002, plaintiff and respondent Jose Orozco filed a complaint in unlawful detainer against defendant' and appellant Olivo *Supp. 9 Casimiro. Respondent alleged that he leased property to appellant at a monthly rent of $550, which was later increased to $601, and appellant was served with a “3-day notice to perform covenants or quit.” The three-day notice, attached as an exhibit to the complaint, stated that “YOU HAVE BREACHED the rental agreement... by: NOT PAYING YOUR LATE FEE WHEN RENT IS NOT PAID BY THE 13TH OF THE MONTH IN THE AMOUNT OF $50.00 PURSUANT TO OUR RENTAL AGREEMENT PARAGRAPH (2). FOR THE MONTH OF NOVEMBER THE RENT WAS NOT PAID UNTIL THE 21ST THEREFOR[E] MAKING YOUR RENT LATE.” On December 18, 2002, appellant, in propria persona, filed a general denial which denied the allegations of respondent’s complaint and set forth a variety of affirmative defenses, including breach of the warranty of habitability. On December 19, 2002, the Legal Aid Foundation of Los Angeles substituted in as counsel for appellant.
The matter proceeded to a court trial on January 30, 2003. The first amended settled statement on appeal reflects that the parties stipulated that all facts alleged in the complaint were true, except that the correct commencement date of the lease was July 10, 1998, not July 10, 1999, as alleged in the complaint. The rental agreement and three-day notice were received into evidence. The lease provided that rent was due on the tenth of the month, as well as providing for a “Late Rent Charge” of “$50.00 3.days.GRACe [szc].” The parties additionally stipulated that neither party “spoke, read or wrote in the English language.” At respondent’s request, the matter was continued to February 18, 2003, to permit respondent to file a trial brief.
Although not reflected in the settled statement, appellant was also apparently given leave to file a trial brief, since he did so on January 30, 2003. Appellant contended that the $50 late fee was punitive in nature and not a “good faith estimate of the damages likely to be suffered by [respondent] in the case of a late payment.” Therefore, according to appellant, the late fee, which bore no rational relationship to any actual damages suffered by respondent, was “void and unenforceable.” In his brief filed on February 13, 2003, respondent countered that the late fee was presumptively valid under Civil Code section 1671.[1] Respondent further noted that appellant specifically agreed in the lease to the late fee amount of $50.
The matter went forward on the scheduled date of February 18, 2003. Both sides moved for judgment based upon the stipulated facts and the trial briefs. The trial court took the matter under submission. In its judgment issued later the same day, the trial court found for respondent. It ordered the lease forfeited and awarded respondent possession of the premises, as well as *Supp. 10 statutory damages of $1,380.40, attorney fees of $500, and costs of $106.30. Appellant filed a notice of appeal of the judgment on March 4, 2003.
Contentions on Appeal
Appellant makes two contentions in this appeal. His first contention is that a provision in a residential lease that requires a tenant to pay a set amount whenever rent is paid late is always void. Appellant’s theory is as follows: (a) late fees are only allowed when it is impracticable or extremely difficult to fix actual damages; (b) respondent was only entitled to interest for a late payment of rent; (c) interest is not impracticable or extremely difficult to fix; and (d) therefore, contractual provisions for late fees in residential leases are never valid. Appellant’s second contention is that even if such fees are allowed, the landlord must plead and prove that such damages were impracticable or extremely difficult to fix, which respondent did not do in this case.
Discussion
1. Applicable Law.
Section 1951.5 provides that “[sjection 1671, relating to liquidated damages, applies to a lease of real property.” Section 1671, unofficially entitled “Validity; standards for determination; applicability of section,” provides in relevant part as follows: “(b) Except as provided in subdivision (c), a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made, [f] (c) The validity of a liquidated damages provision shall be determined under subdivision (d) and not under subdivision (b) where the liquidated damages are sought to be recovered from either: [][] (1) A party to a contract for the retail purchase, or rental, by such party of personal property or services, primarily for the party’s personal, family, or household purposes; or [f] (2) A party to a lease of real property for use as a dwelling by the party or those dependent upon the party for support, [f] (d) In the cases described in subdivision (c), a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.”
As is apparent from the language of section 1671, a liquidated damages provision in a residential lease is normally void, except where the parties specifically agree and “when, from the nature of the case, it would be *Supp. 11 impracticable or extremely difficult to fix the actual damage.” (Id., subd. (d).) Once the landlord shows that it was impracticable or extremely difficult to fix actual damages, the amount the parties agreed upon is presumed to represent the amount of damage suffered by the breach. Appellant argues that, notwithstanding such language, late fee provisions in a residential lease are never valid, since the landlord is only entitled to interest on the late-paid rent as damages, which is easily ascertainable as a matter of law. Appellant’s legal premise, however, is simply wrong. A landlord is not limited to interest as damages as a consequence of the late payment of money. He is also entitled to “ 1 “administrative costs reasonably related to collecting and accounting for” ’ ” late payments. (Hitz v. First Interstate Bank (1995) 38 Cal.App.4th 274, 278 [44 Cal.Rptr.2d 890], quoting Beasley v. Wells Fargo Bank (1991) 235 Cal.App.3d 1383, 1390 [1 Cal.Rptr.2d 446]; see also Garrett v. Coast & Southern Federal Sav. & Loan Assn. (1973) 9 Cal.3d 731, 741 [108 Cal.Rptr. 845].)
Section 1671, subdivision (d), applies to contracts for retail purchases or services, as well as real property leases. (Id., subd. (c)(1)); Beasley v. Wells Fargo Bank, supra, 235 Cal.App.3d at p. 1399.) Therefore, cases discussing the applicability of section 1671, subdivision (d), to contracts for retail purchases or services are instructive on the issues presented in this appeal. For example, Hitz involved a class action which challenged a bank’s imposition of late fees against credit card holders who did not make minimum monthly payments. (Hitz v. First Interstate Bank, supra, 38 Cal.App.4th at p. 279.) The trial court ruled that such fees were void under section 1671, subdivision (d). (Hitz, at p. 279.) The appellate court, in a thorough discussion of section 1671, subdivision (d), noted that subdivision (d), not subdivision (b), applied to situations described in subdivision (c), and that the issuance of a credit card was a “service” within the ambit of subdivision (c)(1). (Hitz, at pp. 286-287.)
Hitz also outlined the relevant law in this area. First, “[f]or liquidated damages to be valid under subdivision (d) of Civil Code section 1671, it must have been ‘impracticable or extremely difficult to fix the actual damage.’ [Citation.]” (Hitz v. First Interstate Bank, supra, 38 Cal.App.4th at p. 288.) Additionally, “the amount of liquidated damages ‘must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained.’ [Citation.]” (Ibid.) Finally, “[a]bsent either of these elements, a liquidated damages provision is void, although breaching parties remain liable for the actual damages resulting from the breach. [Citation.]” (Ibid.) The court noted that there was evidence at trial that the bank’s late fee was intended “ ‘to generate new revenue’ ” and “ ‘increase . . . profitability.’ ” (Id. at p. 289.) As is apparent, such testimony did not tend to support a conclusion that the late fee was merely intended to recoup damages suffered by late payments.
*Supp. 12 2. Respondent neither pleaded nor proved that damages were impracticable or extremely difficult to fix, and thus he was not entitled to the presumption that the late fee represented actual damages. Under these circumstances, the late fee was void.
Respondent’s complaint did not plead that the late fee was impracticable or extremely difficult to fix. Furthermore, respondent did not present any such evidence at trial. Although respondent appears to rely on the trial stipulation that neither party spoke, read, or wrote in the English language, this is not evidence that damages for late payment of rent were impracticable or extremely difficult to fix. To the extent that respondent may be arguing that notices would have to be prepared in a language other than English, we note that the lease agreement was in English, as well as the three-day notice regarding the late fee. Although respondent may have been able to present evidence below that would have shown in this particular case that damages resulting from the late payment of rent were impracticable or extremely difficult to fix, he did not do so. In the absence of such evidence, he was not entitled to the presumption that the late fee was the amount of damage caused by the late payment. Thus, under the evidence in this case, the late fee was void and unenforceable.
The judgment is reversed. The matter is remanded to the trial court with instructions to enter judgment for appellant. Appellant to recover costs on appeal.
McKay (Patti Jo), J., and Wasserman, J., concurred.

 All further statutory references are to the Civil Code unless otherwise indicated.