**NOT FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| STUART HUTCHISON; BARBARA HUTCHISON, on behalf of themselves and all others similarly situated, <br><br>   Plaintiffs - Appellants, <br><br> v. <br><br>YAHOO! INC., a Delaware corporation; AT&T INTERNET SERVICES, INC., FKA SBC Internet Services, Inc., a Delaware corporation and subsidiary of AT&T, INC., <br><br>   Defendants - Appellees. | No. 09-55847 <br><br> D.C. No. 2:07-cv-03674-SVW-JC <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted June 9, 2010
Pasadena, California

Before: TROTT and W. FLETCHER, Circuit Judges, and BREYER,
District Judge.[**]

---

 [*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

 [**] The Honorable Charles R. Breyer, United States District Judge for the Northern District of California, sitting by designation.

This case concerns the application of California's statutory restrictions on liquidated damages clauses in the context of early termination fees. Plaintiffs entered into a defined-length contract with Defendant for the provision of internet access. The contract further provided for the payment of an early termination fee ("ETF") if Plaintiffs chose to terminate their service before the expiration of the contract. Plaintiffs chose to terminate their service early, and so were forced to pay the ETF. Plaintiffs argue that this ETF constitutes a liquidated damages clause, and that such a clause is void under California Civil Code § 1671. The district court granted Defendant summary judgment. This Court has jurisdiction under 28 U.S.C. § 1291, and we AFFIRM the judgment of the district court in all respects.

In November of 2004, Stuart and Barbara Hutchison entered into a one-year service agreement with AT&T for the provision of telephone and high speed internet services. Pursuant to AT&T's Terms of Service, Plaintiffs were to be charged an ETF of $200 if they chose to end their service prior to the expiration of the contract period. In exchange for agreeing to this one-year duration and the accompanying ETF, Defendant waived both the cost of installation (approximately $75) and the cost of a modem (approximately $100). In addition, Plaintiff paid a

monthly rate lower than what would have been charged in a month-to-month contract.

Fifty weeks after signing their contract, and two weeks before the period expired, Plaintiffs informed AT&T that they wished to terminate their service. Pursuant to the ETF provision, Plaintiffs were charged the $200 ETF fee. Plaintiffs brought suit, arguing that the ETF violated § 1671 and California's Unfair Business Practices Act. The district judge disagreed and granted summary judgment to Defendant.

The central controversy in this case is whether the ETF imposed on Plaintiffs constitutes a liquidated damages provision that is subject to California Civil Code § 1671. The California Supreme Court addressed a similar clause in *Blank v. Borden*, 11 Cal. 3d 963 (1974). *Blank* arose from a legal action brought by a real estate broker against a property owner who violated an exclusive-right-to-sell contract. The contract provided that if the property owner chose to back out before the natural expiration of the contract, she would pay the broker a pre-determined fee. *Blank* concluded that "the withdrawal-from-sale clause in an exclusive-right-to-sell contract [is] not . . . a void penalty provision." *Id.* at 970. It explained that the clause provided "a true option or alternative: if, during the term of an exclusive-right-to-sell contract, the owner changes his mind and decides that

3

he does not wish to sell the subject property after all, he retains the power to terminate the agent's otherwise exclusive right through the payment of a sum certain set forth in the contract." *Id.* Such an alternative performance provision was held not to be subject to § 1671.

The same is true here. Plaintiffs availed themselves of a defined-length plan that included certain discounts on both up-front and monthly fees. Those fees would have been incurred on a month-to-month plan. They did so, however, with the knowledge that if they wished to terminate the contract early, it would result in a set fee. This presented Plaintiffs with a rational choice: they took advantage of lower fees, but with the possibility of an ETF if they cancelled the service early. Under *Blank*, such a clause is not a penalty provision. *See also Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1315 (2005) ("Where a contract for a specified period of time permits a party to terminate the agreement before its expiration in exchange for a lump-sum monetary payment, the payment is considered merely an alternative to performance, and not a penalty.").

The dissent reads *Blank* differently. It argues that the ETF in this case, unlike the fee paid in *Blank*, imposed a net financial loss on Plaintiff.[1] In *Blank*, the property owner chose to keep the property and pay a fee, rather than sell the property. Both options, according to the dissent, might appeal to a rational owner. The ETF in this case, according to the dissent, amounted to a choice between paying the ETF or simply allowing the contract to expire naturally, without any further cost.

This analysis fails to account for *Blank*'s admonition that it is not whether the choice is "rational" when a party makes it—e.g., at the time a consumer is considering terminating his contract early—but only whether it is rational when "viewed from the time of making the contract." 11 Cal. 3d at 971. As noted above, when Plaintiff agreed to this contract, Defendant correspondingly agreed to waive fees amounting to $175. Defendant also agreed to charge a discounted monthly rate. Therefore, when Plaintiff chose to terminate the contract in the twelfth month, he had already accrued a benefit of more than $175. Although the

---

[1] The dissent concedes that, for the majority of the contractual period, the ETF provision was a net financial <u>benefit</u> to consumers. This is so because choosing to terminate early in the contract, and paying the $200 fee, is less expensive than paying the remaining monthly payments. The Hutchisons' alleged financial harm occurred only because they terminated in the final month of the contract, and had in fact pre-paid the final monthly payment.

record does not reflect the precise amount of the monthly discount, a discount of only $2 a month would result in Plaintiff facing equally attractive options in month 12: the discounts obtained by virtue of the year-long agreement would add up to $200, thereby offsetting the ETF. Therefore, viewed from the time of making the contract, the ETF provision provides a consumer with a rational choice.

Moreover, even if the consumer could foresee the ETF as a more expensive option than simply allowing the contract to expire, this does not doom the clause under *Blank*. *Blank* does not require than an alternative performance provision offer choices with precisely equal out-of-pocket costs.[2] On the contrary, it defines liquidated damages clauses in a far more narrow fashion. Such a clause "realistically contemplates *no element of free rational choice* on the part of the obligor insofar as his performance is concerned." *Id.* (emphasis added). Even if the ETF were a somewhat more expensive option than permitting the agreement to expire, this does not mean that it "contemplates no element of free rational choice." On the contrary, as the dissent explains, paying the ETF affords a consumer certain

---

[2] Indeed, *Blank* could not do so without contradicting prior California Supreme Court case law. *See* Garrett v. Coast & Southern Federal Savings & Loan Assoc., 9 Cal. 3d 731, 736 (1973) (discussing Thompson v. Gorner, 104 Cal. 168 (1894)).

benefits, such as the ability to move without retaining internet service at a prior residence.

The dissent seeks to impose a rigidity to the "alternative performance" test that is not evident in the California Supreme Court's opinions. On the contrary, the relevant opinions emphasize a range of different issues, all in the service of determining whether a given contract's alternative provisions are reasonable. Given the trade-off that is manifest in the structure of this contract, it is certainly reasonable for a consumer to trade a year-long commitment for the possibility of substantial discounts over the life of the contract.

The district court correctly granted summary judgment to Defendant, and that decision is **AFFIRMED**.

*Hutchison v. AT&T, et al.*, No. 09-55847

W. FLETCHER, Circuit Judge, dissenting:

Stuart and Barbara Hutchison entered into a one-year contract with AT&T. AT&T promised to provide telephone and high speed internet services for the contract term. In return, the Hutchisons promised to pay a monthly fee of approximately $40 for each of the 12 months of the term. The contract provided, further, "If you [the Hutchisons] . . . cancel the services prior to the expiration of that term, you agree to pay an additional early Termination Fee [of] $200."

Two weeks before the end of their one-year contract, the Hutchisons called AT&T to say that they were moving out of their residence and that they therefore did not need service for the last two weeks of the contract. At oral argument, AT&T's counsel forthrightly stated that when the Hutchisons made that call they had already paid the last monthly fee owed under the contract.

When the Hutchison called AT&T, they were doing both the incoming residents and AT&T a favor. The new residents would not be able to get service until the Hutchisons' service was formally terminated. By letting AT&T know that they did not need the service, the Hutchison gave the new residents the opportunity to get service as soon as they moved in. And they gave AT&T the opportunity to sell the service to the new residents two weeks early, even during the time AT&T

1

still owed service to them.

AT&T counsel conceded at oral argument that if the Hutchisons had not called AT&T, but had merely allowed their service to continue for the last two weeks, AT&T would not have charged them the "early termination fee." However, because the Hutchisons notified AT&T that they did not need the last two weeks of service, AT&T billed the Hutchisons for the early termination fee, despite having already received every monthly payment due under the contract. For their good deed of allowing AT&T to terminate their service two weeks early, the Hutchisons were charged $200.

The question is whether the $200 fee is enforceable because it is an "alternative performance" provision or unenforceable because it is a liquidated damages provision. Under California law, a liquidated damages provision in a consumer contract like this one would be invalid because the amount of actual damages resulting from breach would never be "impracticable or extremely difficult to fix." Cal. Civ. Code § 1671(d). AT&T contends that the fee functions as an alternative means of performance. The panel majority agrees with AT&T. The Hutchisons contend it functions as an invalid liquidated damages provision. I agree with the Hutchisons.

California law tells us to look to function rather than form in analyzing a

contract. *Blank v. Borden*, 11 Cal. 3d 963, 970 (1974). On the facts of this case, the $200 fee did not function as an alternative means of performance. The Hutchisons had a contractual obligation to pay AT&T $40 per month for twelve months. They fully performed that obligation. AT&T had a contractual obligation to provide twelve months of service to the Hutchisons. Even though the Hutchisons had paid in full and were contractually entitled to two more weeks of service, they excused AT&T from performing that obligation. An "alternative means of performance" is just that — an alternative means of performing under a contract. In this case, the alternative means in which the Hutchisons could have performed were either (a) to pay the twelve monthly fees or (b) to pay $200. Because the Hutchisons had already performed their obligation to pay the twelve monthly fees, there is no way that they owed an additional $200 as an "alternative means of performance."

During the early months of the Hutchisons's contract, the $200 fee would have functioned as an alternative means of performance. For example, if the Hutchisons had terminated the contract after three months, they would have owed $360 in monthly payments ($40 dollars for each of the remaining nine months), or, alternatively, they would have owed the $200 early termination fee. But during the last few months of the contract the $200 fee functioned as a liquidated damages

3

clause.

Whether a clause has the potential to function as an alternative means of performance or as liquidated damages is determined at the time the parties enter into the contract. *Id.* at 972 n.7. A clause specifying a lump-sum payment in the event of non-performance of an obligation functions as an alternative means of performance if the clause provides a rational choice to the obligated party. *Id.* at 971. But if the clause does not provide a rational choice, the clause functions as a liquidated damages clause. In a consumer contract where actual damages are easily calculable, the liquidated damages clause is invalid.

AT&T principally relies on *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305 (2005), contending that its holding is "controlling." The court in *Morris* upheld a $150 "termination" (not "*early* termination") fee. Unlike the contract in our case, which was for a fixed term, the contract in *Morris* was for an indefinite term. The court wrote, "The agreement continued indefinitely until terminated. . . . [T]ermination by Morris required payment of . . . a $150 termination fee." *Id.* at 1311. Because there was no fixed term, the remaining amount in monthly fees owed by Morris at termination was by definition indefinite (and necessarily more than $150). Because the $150 termination fee was less than the amount in monthly fees remaining on the contract, the fee functioned as an

4

alternative means of performance. By contrast, in the case now before us there was a precise end-date to the contract. There was an "early termination fee," not merely a "termination fee." Because we know the amount of the monthly fee, we know that the $200 fee will exceed the amount remaining to be paid when only a few months remain of the contract period. It is a rational choice – and therefore an alternative means of performance – to pay a termination fee to end a contractual obligation to pay monthly fees indefinitely. It is not, however, a rational choice to pay $200 when one owes less than that in remaining monthly fees.

AT&T also relies, though less heavily, on *Blank v. Borden*, 11 Cal. 3d 963 (1974). In *Blank*, the owner of a house entered into a seven-month exclusive contract with a realtor. The contract provided that if the realtor succeeded in selling the house within that period, he was entitled to 6% of the selling price as a commission. The contract further provided that if the owner withdrew the house from sale during the seven-month period, he would owe the realtor 6% of the price at which the house was expected to sell. The owner withdrew the house from sale during the seventh-month period and then objected that the 6% expected-price clause was an unenforceable penalty.

The Supreme Court upheld the clause. It wrote:

[T]he clause in question presents the owner with a true option or alternative: if, during the term of an exclusive-right-to-sell contract, the owner changes

5

his mind and decides that he does not wish to sell the subject property after all, he retains the power to terminate the agent's otherwise exclusive right through the payment of a sum certain set forth in the contract. . . . [W]hat distinguishes the instant case from other situations in which a form of alternative performance is used to mask what is in reality a penalty or forfeiture is the element of *rational choice*.

*Id.* at 971 (emphasis added). In support of its rationale, the Court quoted

McCormick's treatise on Damages:

'[W]hile an alternative promise to pay money when it presents a conceivable choice is valid, yet, if a contract is made by which a party engages himself either to do a certain act or to pay some amount which at the time of the contract *no one would have considered an eligible alternative*, the alternative promise to pay is unenforceable as a penalty.' (McCormick, Damages, supra, § 154, pp. 617-618).

*Id.* at 971 n.7 (emphasis added).

The Supreme Court's decision in *Blank* shows what is wrong with the $200 early termination fee in this case. The Court in *Blank* upheld the 6% expected-price clause because it preserved a rational choice for the owner. If during the life of the contract the owner decided he did not want to sell the house after all, and if the owner was willing to pay 6% of the expected price in order to withdraw the house from the market, that was the owner's "rational choice." This could be a rational choice even if only two weeks remained on the contract. That is, if the owner was willing to pay 6% of the expected price to avoid the risk that a buyer would accept the outstanding offer during the last two weeks, it was rational for the

6

owner to withdraw the house from the market and to pay the 6%.

In this case, the Hutchisons owed twelve monthly fees of $40 during the one-year life of the contract. When the parties entered into the contract, it was clear that if the contract were terminated with five months or more remaining on the contract, the $200 fee would function as an alternative means of performance. It is equally clear that if the contract were terminated with four months or fewer remaining, the $200 fee would function as an invalid liquidated damages clause. If four months remained on the contract, the Hutchisons would owe only $160 in monthly payments, but would be charged $200. It would not be a "rational choice" to pay a $200 early termination fee when less than $200 in monthly payments was left on the contract. In McCormick's words, "no one would have considered [it] an eligible alternative" to pay $200 when less than $200 in monthly payments remained to be paid. The irrationality of such an alternative was fully apparent at the time the parties entered into the contract.

In sum, I conclude that the $200 early termination fee in this case is not an alternative means of performance but rather, as it functions, as an invalid liquidated damages provision under California's Civil Code § 1671(d). The $200 fee cannot function as an alternative means of performance because the Hutchisons have already fully performed their obligation to pay for twelve months of service. More

7

generally, the $200 early termination fee functions as an invalid liquidated damages clause rather than an alternative means of performance when the amount of monthly fees remaining on the contract is less than $200. In this case, there were no remaining monthly payments owed. To state the obvious, 0 is less than 200.

I fundamentally disagree with the majority's conclusion that the Hutchisons can be required to pay $200 in addition to the twelve monthly payments they have already made under this twelve-month contract. I respectfully dissent.